Timothy LINCOLN, a minor, by his guardian *ad litem*, Stephen P. Hurley, Dennis Lincoln and Eunice Lincoln, Plaintiffs-Respondents,

v.

Gary L. SEAWRIGHT, Defendant-Appellant-Petitioner,

Theodore TOEBAAS, Stanford Ninedorf, Beverly Ninedorf and Phyllis Greenberg, Defendants.

Supreme Court

*No. 79–1932. Argued September 8, 1981.—Decided October 6, 1981.*

(Also reported in 310 N.W.2d 596.)

**6**

For the petitioners there were briefs by *Melissa Uelk Smith* and *Bell, Metzner & Gierhart, S.C.*, of Madison, and oral argument by *Ms. Smith.*

For the respondents there was a brief by *W. Dan Bell, Jr.*, and *Bell & Hurley, S.C.*, of Madison, and oral argument by *W. Dan Bell, Jr.*

BEILFUSS, C. J. This is a review of a decision of the court of appeals which affirmed an order of the Circuit Court for Dane County, P. CHARLES JONES, Judge, denying a motion of the defendant, Gary L. Seawright, a nonresident, to dismiss for want of personal jurisdiction under Wisconsin's long-arm statute, sec. 801.05, Stats. 1977.

The facts are not disputed for the purposes of this review. On September 30, 1978, Timothy Lincoln, a minor, was bitten by a dog on the grounds of the apartment building where he lived with his parents in Madison, Wisconsin. The dog was a Japanese Akita named "Moose," which had recently come into the custody of Theodore Toebaas. Toebaas lived in the same building as the Lincolns, but was out of town on the day of the biting and the dog was being cared for by others in his absence.

Originally, the dog belonged to appellant Seawright. In the early 1970's, Seawright lived in Madison and became acquainted with Toebaas. During this period he gave Toebaas an Akita dog as a gift. However, this dog subsequently ran away and is not the dog which bit Timothy Lincoln.

Seawright moved from Wisconsin in 1972, eventually settling in New Mexico, where he works as a veterinarian. In July, 1978, Seawright owned the Akita dog named Moose which he shipped to Jerri Miller, a breeder

in Texas. Upon receiving the dog, Ms. Miller discovered a defect in the formation of the dog's tail, which made it unsuitable for show purposes. She advised Seawright that she no longer wanted the dog.

Seawright remembered that Toebaas had lost the Akita which he had previously given him; he telephoned Toebaas and told him that he would send him another dog free of charge if Toebaas wanted one. Toebaas accepted the proposal and Seawright arranged to have Miller ship the dog Moose directly from Houston to Madison. When Toebaas went to pick up the dog in Madison he found the air freight charges of $150 were owing. He contacted Seawright, who wired the money to pay these charges.

After Toebaas informed him of the biting incident, Seawright asked Toebaas to have the dog put to sleep. Toebaas was reluctant to do so, but agreed upon Seawright's insistence. The dog in question, Moose, was alleged to have bitten another child while Seawright owned it in New Mexico. In their amended complaint the Lincolns allege that Seawright failed to warn Toebaas of the dog's potentially dangerous tendencies prior to sending it to Wisconsin.[1]

---

[1] The issue of whether Seawright actually did warn Toebaas of the dog's previous behavior was not argued or briefed to this court. Indeed, it seems to have been conceded by the appellant that he failed to tell Toebaas. However, this issue may be in doubt since Toebaas stated in his deposition that, prior to the time the dog was shipped to Wisconsin, Seawright did inform him about the alleged biting incident in New Mexico. This is mentioned in Toebaas' deposition. In fact, a portion of this deposition in which Toebaas states that Seawright told him about the previous biting incident before having the dog sent to him is quoted in the appendix to respondents' brief to the Court of Appeals.

While we are curious why this issue was not argued by appellant, our decision in this case does not rest upon this ground. We are assuming that Seawright did not warn Toebaas and we base our holding upon this assumption.

Appellant's only relevant contacts with the State of Wisconsin were those having to do with this transfer of the dog, Moose, from Houston to Madison. He arranged to have the dog shipped from Miller in Houston to Toebaas in Madison. He made several telephone calls to Toebaas in Madison to prepare the transfer. He also paid the air freight charges to ship the dog to Wisconsin. However, Seawright is not in the business of shipping dogs to Wisconsin or other states, nor does he ship dogs out of the state with any regularity. He has lived in New Mexico for several years, returning to Wisconsin infrequently for social visits. Appellant is a veterinarian and is not engaged in the breeding of dogs as a business. He received no consideration from Toebaas for the dog, nor was there any indication that he expected to gain from the transaction. The entire transaction appears to be a gift from Seawright to Toebaas, although there are indications that Seawright retained the right to use the dog for stud purposes, should the occasion arise.

The Lincolns began this action to recover damages for Timothy's personal injuries. In the amended complaint five defendants are named, including Seawright. The allegations against Seawright were that: (1) at the time of the biting he was the owner of the dog, either solely or in part; (2) he was negligent in shipping a dog to Wisconsin which he knew had previously bitten someone; (3) he failed to provide adequate warnings of the dog's dangerous propensities; and (4) he failed to insure adequate supervision over the dog, given its dangerous propensities.

Seawright moved to dismiss the complaint for lack of personal jurisdiction. The trial court held that personal jurisdiction over Seawright could be obtained under sec. 801.05(2), (3) or (4), Stats. On appeal to the court of appeals, the decision was affirmed, with the court of appeals basing its decision solely on sec. 801.05(3).

The relevant portions of Wisconsin's long-arm statute are as follows:

"801.05 **Personal jurisdiction, grounds for generally.** A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:
"...
"(2) SPECIAL JURISDICTION STATUTES. In any action which may be brought under statutes of this state that specifically confer grounds for personal jurisdiction over the defendant.
"(3) LOCAL ACT OR OMISSION. In any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant.
"(4) LOCAL INJURY: FOREIGN ACT. In any action claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided in addition that at the time of the injury, either:
"(a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or
"(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."

Recent cases construing the Wisconsin long-arm statute have detailed the type of analysis required in applying the statute. The burden is on the plaintiff to establish jurisdiction under the long-arm statute.[2] However this court has also made it clear that the long-arm statute is to be liberally construed in favor of exercising jurisdiction.[3]

---

[2] *Schmitz v. Hunter Machinery Co.*, 89 Wis. 2d 388, 396, 279 N.W.2d 172 (1979).

[3] *Clement v. United Cerebral Palsy of S.E. Wis.*, 87 Wis. 2d 327, 332, 274 N.W.2d 688 (1979), and cases cited therein.

Sec. 801.05, Stats., represents the attempt to codify the rules regarding minimum contacts which were developed in the line of United States Supreme Court cases beginning with *International Shoe Co. v. Washington,* 326 U.S. 310 (1945). In that case the Supreme Court held that a defendant must have certain "minimum contacts" with the state in order to satisfy due process. Sec. 801.05 was drafted to attempt to codify the minimum contacts sufficient to comport with a defendant's right to due process.

This court has thus stated that compliance with the language of sec. 801.05, Stats., is "prima facie compliance" with the due process requirements. *Schmitz v. Hunter Machinery Co.,* 89 Wis. 2d 388, 401–03, 279 N.W. 2d 172 (1979). *See also: Fields v. Playboy Club of Lake Geneva, Inc.,* 75 Wis. 2d 644, 653, 250 N.W.2d 311 (1977).

This does not mean, however, that the plaintiff's burden of proof is conclusively satisfied in all cases upon a showing of compliance with the statute. As we said in *Hasley v. Black, Sivalls & Bryson, Inc.,* 70 Wis. 2d 562, 577, 235 N.W.2d 445 (1975):

"The showing of coverage under one of the subsections of sec. 262.05, Stats., presumes that due process is met, subject to the objecting defendant's opportunity to rebut, especially through use of a five item due process jurisdictional contact analysis adopted in *Zerbel.* The burden is not on the defendant to prove lack of contact with this state as was erroneously required by the trial court in *Afram,* even though the motion to dismiss is produced by the defense; the defendant may dispute the contacts alleged or attack the demonstrated statutory compliance on due process grounds."

Therefore, compliance with sec. 801.05, Stats., raises a presumption of compliance with due process. This presumption may be rebutted by a defendant, especially

through the use of the five-factor test for due process stated in *Zerbel v. H.L. Federman & Co.*, 48 Wis. 2d 54, 64–65, 179 N.W.2d 872 (1970). In *Zerbel*, this court adopted the following factors for a due process analysis in personal jurisdiction cases: the quantity of contacts with the state, the nature and quality of the contacts, the source of the cause of action, the interest of Wisconsin in the action, and convenience.

In applying these tests for personal jurisdiction to the facts in this case, we hold initially that neither subs. (2) nor (4) of sec. 801.05, Stats., may provide a basis for jurisdiction in this case. The court of appeals based its decision on sec. 801.05(3), however the trial court also found jurisdiction to be proper under both subs. (2) and (4) of sec. 801.05. We hold that this case does not fit within either sub. (2) or (4). Sub. (2) deals with special jurisdiction statutes. In the revision notes by the reporter for the Judicial Council, Professor G.W. Foster, Jr., which have often been used by this court as an aid to interpreting sec. 801.05, Professor Foster writes that the purpose of sub. (2) is to preserve special statutes which confer grounds for personal jurisdiction. Wis. Annot., 1979, p. 56. As an example, he cites sec. 345.09, which specifically confers jurisdiction on nonresident motorists in actions arising out of the operation of motor vehicles in this state. No comparable provision is found in ch. 174 concerning dogs. Absent such a statute specifically conferring grounds of personal jurisdiction, sec. 801.05(2) does not apply.

While sub. (4) would seem to provide the best opportunity to exercise personal jurisdiction because it deals with local injuries caused by foreign acts, it clearly does not fit the present factual situation. The court of appeals did not mention sub. (4) in its decision, but the trial court found sub. (4) to be applicable for three reasons.

The court found control exercised by Seawright over the dog because: (1) Seawright "solicited" Toebaas to assume care of the dog; (2) Seawright reserved the right to use the dog for stud purposes; and (3) Seawright requested that Toebaas destroy the dog after it bit Lincoln.

While these factors may arguably indicate some control over the dog by Seawright after it left his possession, control is not the determinative factor under sub. (4). Sub. (4) requires, in addition to a local injury and a foreign act, that either sub. (a) or (b)[4] is satisfied. It would involve a considerable distortion of the facts of this case to hold that they fit under either (a) or (b). Seawright's only contacts with this state were in the form of arrangements he made in order to convey the dog as a gift to Toebaas. This does not qualify as "solicitation or service activities" within the state by the defendant. Neither would the dog sent in to the state qualify under "products, materials or things processed, serviced or manufactured by the defendant" under sub. (b). To construe a statute liberally does not mean that we should ignore the language of the statute. Furthermore, even if Seawright's activities were held to fit within sub. (4), it would violate due process to subject him to the jurisdiction of this state. His only contacts with the state involved shipping one dog into Wisconsin in a gift transaction from which he derived no financial gain. This is certainly not enough to meet the five factors set out in *Zerbel v. H.L. Federman & Co., supra,* 48 Wis. 2d at 64–65.

---

[4] 801.05(4), Stats.:

" . . .

"(a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

"(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade."

While sec. 801.05(3), Stats., provides a more arguable ground for jurisdiction in this case, we hold that it, too, is an improper basis for jurisdiction. This section requires an "act or omission within this state by the defendant." There are two possible ways for Seawright's actions to qualify as an act or omission in this state. First, his alleged failure to warn could be viewed as a continuing negligent omission which accompanies the dog into Wisconsin, thus constituting an omission in Wisconsin. This seems to have been the basis for the holding by the court of appeals. Secondly, his act of wiring the money into Wisconsin to pay the air freight charges might be viewed as a local act. This was mentioned in the trial court's decision.

Appellant argues that the act or omission must actually take place within the state, as required by the language of the statute. In support of this position, appellant quotes from the Revision Notes by Professor Foster:

"The doing of an act, or causing it to be done, is a substantial contact with the state. The power of the state to regulate conduct within its borders is not doubted. Due process allows the enactment of any measure not unreasonably related to a proper legislative or judicial objective . . . . Subjecting a defendant to personal jurisdiction at the place of his act to enforce suits arising out of the act would not seem unreasonably related to the regulation by the state of the act itself." Wis. Annot., 1979, p. 59.

Respondents argue for a much broader reading of sub. (3). Beginning with the proposition that sec. 801.05, Stats., was intended to provide for the exercise of jurisdiction to the fullest extent consistent with due process,[5] they claim that Seawright's actions qualify under sub. (3) in this case because subjecting him to jurisdiction under sub. (3) would not violate defendant's right of

[5] *Schroeder v. Raich*, 89 Wis. 2d 588, 593, 278 N.W.2d 871 (1979).

due process. We disagree with this argument. The language of sub. (3) does not cover this factual situation. Further, it would be a denial of defendant's right of due process to subject him to jurisdiction in this case because he has insufficient contacts with this state.

While the statute must be read broadly, it must also be remembered that the specific items listed in sec. 801.05, Stats., represent a codification of the minimum contacts required to comport with due process. If we interpret the provisions of sec. 801.05 too broadly, we risk losing the appropriate minimum contacts which are "built in" to the statute. Therefore, we cannot ignore the explicit provisions of the long-arm statute. The court of appeals came dangerously close to doing this when it stated that:

"The court's principal inquiry, therefore, is not whether the defendant's acts fit neatly into one or more of the specific jurisdictional bases listed in the long-arm statute, but rather whether the party subjected to jurisdiction is thereby denied due process." [Court of Appeals Op., p. 4]

As the discussion of the long-arm jurisdiction in Wisconsin, *supra,* makes clear, the rule in this state has evolved so that compliance with the long-arm statute is viewed as prima facie satisfaction of the due process requirements. *Schroeder v. Raich,* 89 Wis. 2d 588, 597, 278 N.W.2d 871 (1979). But the court of appeals ignored the statutory analysis in deciding this case and proceeded straight to the due process issue. This is not the method of analyzing such cases that has been set forth by the decisions of this court. We do not hold that a defendant's acts must always "fit neatly" into the statute, but the statutory analysis cannot be ignored.

There may be some situations where a defendant's negligent failure to warn may be a continuing negligent omission so as to satisfy sub. (3). Other jurisdictions

differ on this issue, although none seem to have considered a case analogous to this.[6] All we decide here is that, in this case, Seawright's actions did not constitute an "act or omission within this state" for the purposes of sec. 801.05(3), Stats.

*By the Court.*—The decision of the court of appeals is reversed.

---

[6] *See, e.g.:* "Annotation: Construction and Application of State Statutes or Rules of Court Predicating in Personam Jurisdiction Over NonResidents or Foreign Corporations on the Commission of a Tort Within the State." 24 A.L.R.3d 532.