Kenneth E. NELSON, Plaintiff,

v.

Eugene N. BULSO, Jr., Defendant.

No. 97–C–192.

United States District Court,
E.D. Wisconsin.

Oct. 2, 1997.

Gary Ahrens, Gordon P. Giampietro, Michael, Best & Friedrich, Milwaukee, WI, for plaintiff.

Mark F. Foley, James L. Huston, Foley & Lardner, Milwaukee, WI, for defendant.

## DECISION AND ORDER

MYRON L. GORDON, District Judge.

Kenneth E. Nelson originally filed his suit against Eugene N. Bulso, alleging that Mr. Bulso is liable for malicious prosecution, abuse of process, and defamation, in Ozaukee County circuit court. Relying on the diversity of citizenship between the parties, Mr. Bulso subsequently removed this action to federal court. Presently before the court is the defendant's motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, or in the alternative, to transfer venue, pursuant to 28 U.S.C. § 1404(a).

Mr. Bulso, in support of his motion, has submitted his own affidavit. Mr. Nelson has submitted no affidavits or other evidence. The defendant argues that the plaintiff cannot rest upon the allegations in his pleading and that Mr. Nelson's failure to respond with his own affidavit is reason enough for the court to grant the motion to dismiss. Contrary to the defendant's argument, however, the court, in resolving a motion to dismiss for lack of personal jurisdiction, may take as true all well-pleaded facts in the plaintiff's complaint, unless any affidavit submitted by the defendant *contradicts* those facts. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987); *see also RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir.1997) (stating that the plaintiff, in opposing a motion to dismiss for lack of personal jurisdiction, "is entitled to have any conflicts in the affidavits resolved in its favor"); *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 52 (7th Cir.1996) ("Because the case was dismissed [on personal jurisdiction grounds] without an evidentiary hearing, we also must resolve all

relevant factual disputes in [the plaintiff's] favor.").

## I. Factual Background

Mr. Nelson is a resident of Mequon, Wisconsin. (Compl.¶ 1.) Mr. Bulso is a resident, domiciliary, and citizen of Brentwood, Tennessee. (Bulso aff. ¶ 5.) Mr. Bulso has never owned real property in the state of Wisconsin. (Bulso aff. ¶ 7.) Prior to 1991, Mr. Bulso only visited Wisconsin for "one or more tennis tournaments" while he was a college student in 1980–83. (Bulso aff. ¶ 23.)

This is not the first time that Mr. Nelson and Mr. Bulso have faced each other in litigation. It is, however, the first time, that Mr. Bulso has appeared as a named party. Until now, his role was that of an attorney for Orlando Residence, Ltd. ["ORL"], a party that has been opposite Mr. Nelson in various other lawsuits. (Compl. ¶ 4; Bulso aff. ¶ 8.)

On March 21, 1990, a federal district court sitting in Tennessee entered judgment in favor of ORL and against Nashville Residence Corporation ["NRC"], a company primarily owned and controlled by Mr. Nelson, in the amount of $400,000. (Bulso aff. ¶ 8.) In an attempt to collect on that judgment, Mr. Bulso, on behalf of ORL, came to Milwaukee on March 1, 1991, to take an asset deposition of Mr. Nelson. (Bulso aff. ¶ 9.)

ORL subsequently filed another lawsuit, this time against Nashville Lodging Company, Inc. ["NLC"], a limited partnership owned and controlled by the plaintiff, in the chancery court for Davidson County, Tennessee. (Bulso aff. ¶ 10.) On September 5, 1996, that court entered a judgment against Mr. Nelson and NLC, awarding compensatory and punitive damages to ORL. (Compl. ¶ 5; Bulso aff. ¶ 10.) That court also set aside as a fraudulent conveyance a 1986 transfer of real property to NLC from NRC. (Compl.¶ 5.) The Tennessee court of appeals reversed and vacated that judgment on December 18, 1996. (Compl.¶ 5.) *Orlando Residence, Ltd. v. Nashville Lodging Co.,* 1996 WL 724915, at *7 (Tenn.Ct.App. Dec.18, 1996).

NLC filed a bankruptcy petition in the bankruptcy court in the eastern district of Wisconsin on January 2, 1996. (Bulso aff. ¶ 13.) ORL subsequently filed a motion to dismiss that petition, arguing that it had been filed in bad faith, and in February of 1996, Mr. Bulso flew to Milwaukee to appear at a hearing in the bankruptcy court. (Bulso aff. ¶ 15.) Mr. Bulso again flew to Milwaukee on June 21, 1996 to appear at another hearing about Mr. Nelson's petition in the bankruptcy court. The defendant also had a "small number" of telephone conversations with local counsel in Milwaukee regarding the petition. (Bulso aff. ¶ 24.)

On December 15, 1995 Mr. Bulso wrote a letter to the district attorney's office for Davidson County, Tennessee about Mr. Nelson's alleged misconduct in his conveying of property from NRC to NLC and in his assignment of NLC's right to receive rental income to Agincourt Partners, another partnership in which Mr. Nelson is a partner. (Bulso aff. ¶ 12.) On January 26, 1996, February 14, 1996, and March 19, 1996, Mr. Bulso again wrote letters discussing Mr. Nelson to the district attorney's office. (Bulso aff. ¶¶ 14, 17, 19.) On March 26, 1996 and April 26, 1996, Mr. Bulso responded to requests for information from the district attorney's office. (Bulso aff. ¶ 19–20.) On or about June 18, 1996, Mr. Bulso testified before a grand jury, pursuant to a subpoena, about Mr. Nelson's alleged misconduct. (Bulso aff. ¶ 21.)

On June 21, 1996, the grand jury in Tennessee indicted Mr. Nelson for hindering secured creditors, and a warrant for his arrest was issued. (Compl.¶ 10.) The metropolitan police department in Nashville provided information regarding the arrest warrant to the National Criminal Information Center. (Compl.¶ 11.) On July 17, 1996, Mequon police officers, at the request of the Nashville police department, arrested Mr. Nelson in his home, and he spent that night in the Ozaukee County jail. (Compl.¶¶ 9, 14.) Mr. Nelson was released on bail the next day. (Compl.¶ 14.) The state of Tennessee requested extradition for Mr. Nelson in early October, and the Ozaukee County circuit court approved Mr. Nelson's stipulation that he remain under bail pending the conclusion of extradition proceedings before the governor. (Compl.¶¶ 17–18.)

On November 27, 1996, the district attorney for Davidson County, Tennessee, notified Mr. Nelson that his office was going to terminate its prosecution of him. (Compl.¶ 19.) A judge in the criminal court in Davidson County entered an order terminating Mr. Nelson's indictment on December 12, 1996. (Compl.¶ 20.)

## II. Analysis

The defendant's primary contention is that this court does not have personal jurisdiction over him and that the court should therefore dismiss this action pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure. The precise question in this case is novel: whether a nonresident defendant who notified authorities in Tennessee about potential criminal conduct in that state and who testified before a Tennessee grand jury, but whose actions allegedly injured the plaintiff in Wisconsin, can be subject to the jurisdiction of a court sitting in Wisconsin.

A federal court sitting in Wisconsin has personal jurisdiction over the parties in a diversity case only if a Wisconsin state court would have such jurisdiction. *Klump v. Duffus,* 71 F.3d 1368, 1371 (7th Cir.1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 2523, 135 L.Ed.2d 1047 (1996). Therefore, this court must resolve two questions. First, it must determine whether the Wisconsin long-arm statute, *Wis. Stat.* § 801.05, applies to Mr. Bulso. *Mid–America Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d 1353, 1358–59 (7th Cir.1996); *see In re All–Star Ins. Corp.,* 110 Wis.2d 72, 76, 327 N.W.2d 648 (1983). Second, if the long-arm statute does apply, the court must then decide whether its exercise of jurisdiction over Mr. Bulso comports with the due process requirements of the Fourteenth Amendment. *Mid–America Tablewares,* 100 F.3d at 1359; *see In re-All Star,* 110 Wis.2d at 76, 327 N.W.2d 648. It is Mr. Nelson's burden to prove that personal jurisdiction exits. *RAR, Inc. v. Turner Diesel, Inc.,* 107 F.3d 1272, 1276 (7th Cir.1997); *State ex rel. N.R.Z. v. G.L.C.,* 152 Wis.2d 97, 104, 447 N.W.2d 533 (1989).

### A. Wisconsin Long–Arm Statute

Mr. Nelson correctly points out that this court is to construe the Wisconsin long-arm statute in favor of the exercise of jurisdiction over Mr. Bulso. *Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.,* 18 F.3d 389, 391 (7th Cir.1994); *Lincoln v. Seawright,* 104 Wis.2d 4, 9, 310 N.W.2d 596 (Wis.1981). Moreover, the long-arm statute in Wisconsin is intended to reach to the fullest extent allowed under the due process clause. *Mid–America Tablewares,* 100 F.3d at 1359; *N.R.Z.,* 152 Wis.2d at 105, 447 N.W.2d 533.

The plaintiff argues that two sections of the state long-arm statute allow this court to exert personal jurisdiction over Mr. Bulso. Both of these sections apply to torts that are committed against someone within the state of Wisconsin.

#### 1. Local Act or Omission

The first section of the long-arm statute, entitled "local act or omission," states that jurisdiction exists "[i]n any action claiming injury to person or property within or without this state arising out of an act or omission within this state by the defendant." *Wis. Stat.* § 801.05(3).

##### a. Consequences in Wisconsin

The plaintiff's first argument as to the local act or omission section of the statute is that Mr. Bulso should be subject to the jurisdiction of a court sitting in Wisconsin simply because the plaintiff claims that the defendant "caused" Mr. Nelson's arrest and jailing in Wisconsin and that he published defamatory comments in Wisconsin.

The mere foreseeability that the defendant's actions in one state would cause injury in another state, however, does not amount to the defendant's causing a local act or omission, as defined by the long arm statute and the cases interpreting the statute. Indeed, this section of the statute does not contemplate that, standing alone, the consequences of an act are enough to establish jurisdiction over the defendant. In *Lincoln v. Seawright,* the Wisconsin supreme court addressed the long-arm statute in a case in which the plaintiff claimed that a New Mexico defendant was liable for his failure to warn about the dangerousness of a dog that the defendant had shipped from New Mexico to Wisconsin. 104 Wis.2d 4, 6–8, 310 N.W.2d 596 (Wis.1981). Finding that § 801.05(3) was inapplicable to the case, the court dismissed

the plaintiff's argument that the alleged failure to warn was an omission that followed the dog into Wisconsin. The court said that the defendant's acts of shipping the dog, calling the dog's new owner, and wiring money to Wisconsin were not acts or omissions *within* the state. *Id.* at 13–14, 310 N.W.2d 596.

In a relevant case from the court of appeals for the seventh circuit, the plaintiff, a Wisconsin corporation, claimed that the out-of-state defendant was liable for fraud and misrepresentation in its purchase of an insurance policy from the plaintiff. All negotiations for the insurance contract occurred in Washington state. *Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.,* 18 F.3d 389, 390–91 (7th Cir.1994). Upon the defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff argued that § 801.05(3) applied to the defendant because its act or omission caused the plaintiff financial harm in Wisconsin. Finding *Lincoln v. Seawright* dispositive, the court of appeals said that the holding *in Lincoln* was that "acts or omissions occurring outside Wisconsin but having consequences that are felt within Wisconsin do not fit within the tort provisions of § 801.05(3)." *Id.* at 392. Therefore, the court said, "we see no reason why the financial injury here, caused by an act or omission, should receive more protection than the physical injury experienced in *Lincoln.*" *Federated,* 18 F.3d at 392; *see also Bensusan Restaurant Corp. v. King,* 126 F.3d 25, 28–29 (2d Cir.1997) (finding that an analogous section of the New York long-arm statute did not apply to a defendant who had published a site on the World Wide Web that allegedly injured the New York plaintiff because "[e]ven if [the plaintiff] suffered injury in New York, that does not establish a tortious act in the state of New York within the meaning of [the long-arm statute]").

Branches of this court, including this branch, have followed a similar interpretation of the Wisconsin Supreme Court's holding in *Lincoln.* In *Hodgson v. Mississippi Department of Corrections,* the plaintiff, whose daughter was murdered in Wisconsin by a Mississippi parolee, sued the defendants for their failure to comply with the Uniform Act for Out-of–State Parolee Supervision. 963 F.Supp. 776, 781–82 (E.D.Wis.1997). In finding that § 801.05(3) was inapplicable, Judge Curran rejected the plaintiff's contention that just because his loss occurred in Wisconsin, the defendants' omission therefore occurred in Wisconsin. The court called the plaintiff's theory a "strained interpretation of this subsection" and said that "[a]ny failure to warn or to comply with the Uniform Act for Out-of–State Parolee Supervision on the part of [the defendants] would have occurred in Mississippi, so subsection § 801.05(3) does not authorize personal jurisdiction over them." *Id.* at 796.

Similarly, this court found that it could not exert jurisdiction over two out-of-state defendants, the owner of a job-search company and the company itself, pursuant to § 801.05(3). In that case, the plaintiff asserted that the defendants were liable for their alleged conspiracy with the plaintiff's Wisconsin employer to terminate the plaintiff from her job in Wisconsin. *Cram v. Medical College of Wis.,* 927 F.Supp. 316, 319–20 (E.D.Wis.1996). The only actions that the plaintiff claimed had occurred in Wisconsin were that the individual defendant had traveled once to Wisconsin in connection with the search and had spoken on the telephone with the plaintiff's Wisconsin employer two times after the search had been completed. *Id.* at 318. Even though the plaintiff alleged that Wisconsin was the only jurisdiction in which she suffered damages, I found that, taken together, the defendants' actions did not constitute an "act or omission" *within* the state. *Id.* at 320.

■ Mr. Nelson claims that as a result of Mr. Bulso's actions, he was arrested in his Wisconsin home in front of his Wisconsin family, placed overnight in a Wisconsin jail, and required to appear before a Wisconsin court. In that, he is like the plaintiffs in the above-cited cases because he felt the consequences of the defendants' conduct in Wisconsin. Mr. Nelson, though, has made no allegation that Mr. Bulso committed any of his alleged tortious acts in Wisconsin. Therefore, Mr. Bulso is also like the defendants in the cases cited above. As those cases show, it is not enough for the plaintiff simply to allege that he felt some, or even all,

of the consequences of the defendant's actions in Wisconsin.

The plaintiff, however, takes the argument one step further than the mere claim that the suffering of consequences in a state is enough to establish personal jurisdiction. He contends that jurisdiction exists because Mr. Bulso *intended* his actions in Tennessee to injure the plaintiff in Wisconsin, or in other words, because Mr. Bulso *directed* his actions at a Wisconsin resident. According to Mr. Nelson, Mr. Bulso knew or should have known that his communications with the district attorney in Nashville would eventually lead to the arrest and defamation of Mr. Nelson in Wisconsin.

As the above-cited cases show, though, the defendant's knowledge of where his actions might cause damage does not play a role in the analysis of § 801.05(3). That some of Mr. Bulso's actions may fairly be said to have been directed at a Wisconsin resident is not dispositive. It can easily be argued that Mr. Bulso knew that the person about whom he was complaining to the Tennessee district attorney lived in Wisconsin. But it can also easily be argued that the defendant in *Lincoln v. Seawright*, 104 Wis.2d 4, 310 N.W.2d 596 (1981), knew that he was shipping a potentially dangerous dog to Wisconsin, or that the defendants in *Hodgson v. Mississippi Dept. of Corrections*, 963 F.Supp. 776 (E.D.Wis.1997), should have known that their failure to follow the parole statute could result in a parolee harming someone in another state. Nevertheless, these courts found that § 801.05(3) did not establish that the defendants had committed a local act or omission within Wisconsin.

The fact that the injuries claimed by Mr. Nelson—malicious prosecution, abuse of process, and defamation—are more personal in nature than many of the injuries described in the cases above, does not change my finding that § 801.05(3) does not extend to acts committed outside of the state. While there is no Wisconsin case on this exact question, other courts of appeal and district courts have declined to exercise personal jurisdiction over defendants in similar malicious prosecution and abuse of process cases.

The court of appeals for the tenth circuit recently said that a federal court sitting in Mississippi did not have personal jurisdiction over defendants from Texas and Louisiana who were sued for malicious prosecution and abuse of process. *Allred v. Moore & Peterson*, 117 F.3d 278 (5th Cir.1997). The plaintiff was a lawyer in the underlying litigation when the defendants filed a third-party complaint against him, and as a result, the plaintiff had to withdraw from representing his client. The third-party complaint against him was later dismissed. The defendants' only contact with Mississippi was their mailing the third-party complaint and various interrogatories to Mississippi. *Id.* at 280.

Although the *Allred* court noted that the Mississippi long-arm statute was not coextensive with the due process requirements, the court also said that "personal jurisdiction is proper if any element of the tort (or any part of any element) takes place in Mississippi." *Id.* at 282. The court nonetheless distinguished between "actual injury," which is an element of a tort, and the consequences of the injury:

> [T]his Circuit had recognized consistently that Mississippi does not permit *damages* to serve as a proxy for *injury* in the personal jurisdiction calculus. The concepts are distinct and we must endeavor not to conflate the existence of an injury-and hence the completed tort-with the presence of its economic consequences.... The injury suffered in a malicious prosecution tort is the institution of criminal or civil proceedings where the institution ought not to have occurred.

*Id.* at 283 (emphasis in original). Similarly, the court said that a court sitting in Mississippi did not have personal jurisdiction over the plaintiff's abuse of process claim. Specifically, the court found it dispositive that all of the defendants' decisions regarding the third-party complaint were made in either Louisiana or Texas. *Id.* at 285.

In *Wallace v. Herron*, the plaintiff, an Indiana resident, sued three California attorneys and a California law firm in Indiana, alleging that by pursuing a lawsuit against the plaintiff in California, the defendants were liable for malicious prosecution. 778 F.2d 391, 392 (7th Cir.1985), *cert. denied*, 475 U.S. 1122, 106 S.Ct. 1642, 90 L.Ed.2d 187

(1986). The court, engaging in a due process analysis, concluded that personal jurisdiction did not exist. *Id.* at 394. The court rejected the plaintiff's argument that personal jurisdiction existed because the defendants knew that their committing an intentional tort in California would cause injury in Indiana. The court said that it did not interpret United States Supreme Court precedent to require that "any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." *Id.* at 394. Such an analysis, the court said, "would significantly undercut our traditional due process protection for out-of-state defendants." *Id.* at 395.

In another relevant case, the plaintiffs sued a British citizen for his alleged malicious prosecutions of the plaintiffs in England, and the defendant moved for dismissal for lack of personal jurisdiction. *Denmark v. Tzimas,* 871 F.Supp. 261, 264–65 (E.D.La.1994), *aff'd,* 78 F.3d 582 (5th Cir.1996) (unpublished). Applying the due process limitations on the exercise of personal jurisdiction, the court did not pay any heed to the plaintiffs' claims that they suffered damages in Louisiana because of the prosecution in England. Instead, the court observed that "[a]ll of the events giving rise to this claim occurred in England." *Id.* at 267; *see also Lott v. Burning Tree Club, Inc.,* 516 F.Supp. 913, 917 (D.D.C.1980) (holding that a malicious prosecution plaintiff, who was arrested and incarcerated in his home state, could not establish personal jurisdiction over the out-of-state defendant who reported a theft to the police in the defendant's jurisdiction); *Glacier Refrigeration Serv., Inc. v. American Transp. Inc.,* 467 F.Supp. 1104, 1107 (E.D.N.Y.1979) (applying the New York long-arm statute in a malicious prosecution action and finding that the defendants "have performed no purposeful acts in New York in relation to the causes of action which indicate that they have availed themselves of the privilege of conducting business activities in the State, thereby invoking the benefit and protection of New York law").

These cases refute the plaintiff's argument that Mr. Bulso engaged in a "local act or omission" just because the claims at issue here are for malicious prosecution and abuse of process. Like the court of appeals for the tenth circuit in *Allred,* this court must distinguish between the consequences of an action and the action itself even when the claims allege personal harm and embarrassment. The plaintiff's alleged injury was in Tennessee, the jurisdiction in which, according to Mr. Nelson, Mr. Bulso intentionally brought the false criminal proceedings against him. This court cannot find that just because the defendant may have intended for his "malicious prosecution" and "abuse of process" to cause personal harm to the plaintiff in his home state, the defendant's conduct constitutes an act within the state.

■ The same analysis holds true for Mr. Nelson's defamation claim against Mr. Bulso. While courts have recognized that defamatory comments made about a plaintiff and aimed at the jurisdiction in which the plaintiff resides may be enough to establish personal jurisdiction over the defendant, this rule does not extend to the facts of this case.

The plaintiff argues that because the defendant directed his defamatory comments at Mr. Nelson, the defendant should be held liable in the plaintiff's jurisdiction. He relies on *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), for this proposition. In that case, the plaintiff, a California resident, sued the defendants, residents of Florida, for material appearing in a national magazine that had a large circulation in California. *Id.* at 784–85, 104 S.Ct. at 1484–85. A unanimous United States Supreme Court said that a California court could exercise personal jurisdiction over the Florida defendants "because their intentional, and allegedly tortious, actions were expressly aimed at California" and because "the brunt of that injury would be felt by respondent in the State in which she lives and works and in which [the publication] has its largest circulation." *Id.* at 789–90, 104 S.Ct. at 1487. The Court noted that the allegedly defamatory article "concerned the California activities of a California resident." *Id.* at 788, 104 S.Ct. at 1486.

*Calder* is inapplicable to the case at hand because Mr. Nelson's actions were not *aimed* at Wisconsin. There is no allegation that

Mr. Bulso made the comments in Wisconsin or directed the comments to Wisconsin. Therefore, Mr. Bulso's actions are at least one step removed from the magazine's publication in *Calder*. His making statements to a Tennessee district attorney and a Tennessee grand jury is not analogous to a national magazine publishing material that it knew would be widely circulated in the plaintiff's home state.

Mr. Nelson urges that *Calder* does in fact apply here because Mr. Bulso's allegedly defamatory comments were indeed published in Wisconsin since the warrant and the extradition materials became a matter of Wisconsin public record. The flaw in this argument is that Mr. Bulso himself did not publish the warrant or the extradition. Furthermore, it is doubtful that the warrant and extradition warrant were a word-for-word account of Mr. Bulso's statements to the district attorney and the grand jury. The court of appeals for the seventh circuit, in analyzing *Calder*, said that

> the key to Calder is that the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum. Whether these effects, either alone or in combination with other contacts, are sufficient to support in personam jurisdiction will turn upon the particular facts of each case.

*Wallace v. Herron,* 778 F.2d 391, 395 (7th Cir.1985). That Mr. Bulso's comments eventually led to the publication of related materials in Wisconsin is not enough to deem his conduct a local act or omission.

The present action is also distinct from *Calder* because Mr. Bulso's comments concerned the *Tennessee* activities of a Wisconsin resident. The underlying dispute involved Mr. Nelson's alleged fraudulent conveyance of property in order to avoid a judgment against him in a Tennessee court. Therefore, the Wisconsin implications of Mr. Bulso's statements to the Tennessee authorities are less than the California implications of the defendants' defamatory publication in *Calder*. See *Denmark v. Tzimas,* 871 F.Supp. 261, 267 (E.D.La.1994) (finding *Calder* inapplicable because the issue at hand was a libelous article that focused on the "English activities of an English citizen"), *aff'd,* 78 F.3d

582 (5th Cir.1996) (unpublished). Because Mr. Bulso's statements did not focus on Mr. Nelson's activities in Wisconsin, the court cannot find that his statements were a local act or omission under § 801.05(3).

As the above discussion shows, Mr. Bulso's "causing" the plaintiff harm in his home state does not satisfy the local act or omission section of the long-arm statute. The defendant must have done, or not done, something in the state. This is true regardless of the personal and embarrassing nature of the harm.

### b. Wisconsin authorities as defendant's agents

■ Mr. Nelson's second argument that § 801.05(3) applies to his case is that the Tennessee authorities who issued a warrant for the plaintiff's arrest and the Wisconsin authorities who made the arrest were agents of the defendant. Therefore, the plaintiff contends, because Mr. Bulso's agents committed these acts in Wisconsin, Mr. Bulso should be subject to this court's jurisdiction for his having caused a local act or omission.

The plaintiff heavily relies on a case from this district, *Maney v. Ratcliff,* 399 F.Supp. 760 (E.D.Wis.1983), in support of his agency theory. In that case, the plaintiff alleged that various public officials from Louisiana, including a chief of police and a district attorney, improperly used the National Crime Information Center ["NCIC"] in order to locate the plaintiff in Wisconsin and extradite him to Louisiana. *Id.* at 764. Because of the information available on the NCIC, Mr. Maney was subject to arrests and attempted extraditions by authorities in Milwaukee. Furthermore, the Louisiana defendants had been in contact with the Wisconsin authorities regarding the plaintiff's arrest. *Id.* at 768. Applying the predecessor to the current long-arm statute, Judge Reynolds found that personal jurisdiction did exist over the Louisiana defendants because they had, through subordinates in their own jurisdiction, entered the plaintiff's name into the NCIC and had also been in contact with the Wisconsin authorities. *Id.* at 768.

Relying on *Maney,* the plaintiff argues that the Tennessee authorities to whom Mr. Bulso made his statements and the Wiscon-

sin authorities who eventually arrested and attempted to extradite Mr. Nelson, were all Mr. Bulso's agents. Specifically, the Mr. Nelson states:

> Obviously, Bulso could not have directly caused the arrest of Nelson without the assistance of the Tennessee and Wisconsin authorities. But the fact that Bulso required two sets of state actors to accomplish his purpose, does not insulate him from this Court's jurisdiction or the holding in *Maney*. Bulso is not a mere witness who was summoned before the Tennessee grand jury. Bulso is named as the prosecutor; he instigated and propelled the prosecution of Nelson.

(Pl.'s Opposition Brief at p. 8).

In my opinion, *Maney* is not applicable to the case at hand. Here, there is no allegation that the defendant himself entered the plaintiff's name into the NCIC or that he was in contact with the Mequon police department regarding Mr. Nelson's arrest and subsequent court appearances. Moreover, Judge Reynolds did not find that the Wisconsin authorities were the agents of the Louisiana defendants; he held that because their subordinates in Tennessee took the relevant actions *and* because the defendants had been in contact with the Wisconsin authorities, jurisdiction existed.

Finally, even if *Maney* did stand for the proposition that the Wisconsin authorities in that case were the defendants' agents, this court cannot find that the district attorney and grand jury in Nashville were Mr. Bulso's agents. In both Wisconsin and Tennessee, whether a principal has control over someone is the primary question to ask when determining if agency exists. *See Gorski v. Gorski,* 82 Wis.2d 248, 253, 262 N.W.2d 120 (1978) ("Agency is defined as: the fiduciary relation which results from the manifestation of consent by one person to another that the other shall act on his behalf and *subject to his control,* and consent by the other so to act.") (internal quotation and citation omitted) (emphasis in original); *Jack Daniel Distillery v. Jackson,* 740 S.W.2d 413, 416 (Tenn. 1987) ("While there may be a number of factors that determine whether an agency relationship exists, the right of control is the essential test.").

There is nothing in the present case even to hint that Mr. Bulso had any control whatsoever over the district attorney, the grand jury, or the authorities who eventually arrested Mr. Nelson. Indeed, to find otherwise would be to imply that the prosecuting official has little discretion. *See State v. Superior Oil, Inc.,* 875 S.W.2d 658, 660 (Tenn.1994) (noting that a district attorney general has, with constitutional limitations, "virtually unbridled discretion" and that "he or she is answerable to no one") (internal quotations and citations omitted); *Quillen v. Crockett,* 928 S.W.2d 47, 50 (Tenn.Crim.App. 1996) ("[T]he district attorney general's discretion in charging determinations is practically unbridled."); *see also Linda R.S. v. Richard D.,* 410 U.S. 614, 619, 93 S.Ct. 1146, 1149–50, 35 L.Ed.2d 536 (1973) ("[I]n American jurisprudence at least, a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another.").

The district court in *Lott v. Burning Tree Club,* a case mentioned above, addressed this agency question in a case with very similar facts:

> The [defendant, who reported the theft for which the plaintiff was arrested] exercised no "control" over the police officers. That the Club may have foreseen that plaintiff would be arrested in the District is not enough to constitute an agency relationship. . . . It would be an unacceptable result to hold that, whenever law enforcement officers act on a citizen's complaint, they are automatically constituted that citizen's "agent." The absurdity of such a contention required no comment.

516 F.Supp. 913, 917 (D.D.C.1980). I am similarly unwilling to find that Mr. Bulso exercised any kind of control over the authorities that indicted and arrested Mr. Nelson.

Mr. Nelson also maintains that *Simon v. United States,* 644 F.2d 490 (5th Cir.1981), supports the proposition that no formal agency relationship between Mr. Bulso and the Tennessee and Wisconsin authorities is required in order for jurisdiction to exist. In *Simon,* the court of appeals for the fifth circuit held that an out-of-state private attorney who issued an incorrectly addressed sub-

poena to the plaintiff could be subject to the jurisdiction of a court in the plaintiff's home state. That court said that the plaintiff had "made sufficient showing that the acts of the Louisiana federal marshals in serving or attempting to serve subpoena(s) in Louisiana are attributable to [the defendant], who procured the(ir) issuance, at least for purposes of exercising personal jurisdiction ... for the tortious injury resulting in the form in which the marshals served or attempted to serve the process." *Id.* at 497.

Contrary to Mr. Nelson's assertion, I believe that *Simon* does not support Mr. Nelson's premise. The *Simon* court did not rely on the relationship between the defendant and the federal marshals in finding that personal jurisdiction existed. Instead, the dispositive factor was that the defendant *himself* issued the subpoena that the federal marshals served. *Id.* at 497. There are no analogous facts here. Mr. Bulso did not issue the warrant for Mr. Nelson's arrest or place his name on the NCIC. The link between Mr. Bulso and the authorities is much weaker.

Under the instant facts and the case law interpreting § 801.05(3), I find that Mr. Bulso has not committed any acts or omissions within Wisconsin.

### 2. Foreign Act

■ The second section of the long-arm statute that the plaintiff relies upon, entitled "local injury; foreign act," allows jurisdiction in an action:

claiming injury to person or property within this state arising out of an act or omission outside this state by the defendant, provided that at the time of the injury, either:

(a) Solicitation or service activities were carried on within this state by or on behalf of the defendant; or

(b) Products, materials or things processed, serviced or manufactured by the defendant were used or consumed within this state in the ordinary course of trade.

*Wis. Stat.* § 801.05(4). This section of the statute assumes that "where a defendant solicits or advertises for business, he anticipates a direct or indirect financial benefit and subjects himself to the jurisdiction of the courts of the state." *Fields v. Playboy Club of*

*Lake Geneva, Inc.,* 75 Wis.2d 644, 653, 250 N.W.2d 311 (Wis.1977); *see also Pavlic v. Woodrum,* 169 Wis.2d 585, 592, 486 N.W.2d 533 (Wis.Ct.App.1992). Indeed, the court of appeals for the seventh circuit has interpreted this section to require that, in addition to anticipating financial benefit, the defendant actually make the solicitation *to the plaintiff. Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.,* 18 F.3d 389, 393 (7th Cir.1994).

The case law interpreting § 801.05(4) illustrates how the statute was designed to encompass only out-of-state defendants who actively solicit business from persons in Wisconsin and who attempt to receive financial gain from such solicitation. In *Lincoln v. Seawright,* the state supreme court found that § 801.05(4) did not apply to the out-of-state defendant who had shipped the dog to Wisconsin, noting that the defendant's only contacts with the state "were in the form of arrangements he made in order to convey the dog as a gift" and that he had received no financial gain from the shipping of the dog. 104 Wis.2d 4, 12, 310 N.W.2d 596 (Wis. 1981).

This court has recently applied § 801.05(4) twice, and has found both times that the statute did not establish jurisdiction because the defendants had not engaged in solicitation activities. First, I held that the statute did not apply in the case in which the plaintiff sued the out-of-state job search firm and its owner, even though the owner had made telephone calls to the other defendants in Wisconsin. *Cram v. Medical College of Wis.,* 927 F.Supp. 316, 320 (E.D.Wis.1996). Specifically, I rejected the plaintiff's argument that the telephone calls were part of an ongoing service of the job search company. *Id.*

In the second case in which I found that § 801.05(4) did not apply, the plaintiff sued two out-of-state defendants, one a deputy commissioner for the Internal Revenue Service ["IRS"] and the other an assistant secretary for the Department of Treasury, for their allegedly improper and unlawful investigation of the plaintiff. *Kaufmann v. United States,* 840 F.Supp. 641, 646 (E.D.Wis. 1993). One of the defendants, while testifying before a congressional committee on

money laundering, had displayed a newspaper clipping about the plaintiff. The other defendant had written a letter about the plaintiff to an IRS agent in Wisconsin. *Id.* at 650. I found that the defendants' activities in investigating and collecting information about the plaintiff did not amount to solicitation or service activities under § 801.05(4).

The Wisconsin court of appeals has also declined to exercise jurisdiction under § 801.05(4) when the defendant did not direct his business activities or expect a financial benefit from his activities within Wisconsin. In *Pavlic*, a shareholder in a corporation had sent stock certificates and a notice of the corporation's dissolution through the mail to the Wisconsin plaintiff. 169 Wis.2d 585, 592, 486 N.W.2d 533 (Wis.Ct.App.1992). The court said that these actions were not solicitation or service within the meaning of the statute because the defendant did not anticipate a financial benefit when he made the two mailings and because the mailings were part of the defendant's duties as a corporate agent. *Id.*

Similarly, in *Dietrich v. Wisconsin Patients Compensation Fund,* the plaintiff sued the defendant, a physician from North Carolina for malpractice. 169 Wis.2d 471, 485 N.W.2d 614 (Wis.Ct.App.), *review denied,* 491 N.W.2d 766 (Wis.1992). The plaintiff's doctors in Wisconsin had referred the plaintiff to the North Carolina doctor, who examined the plaintiff once in North Carolina. After the exam, the defendant remained in contact with the doctors in Wisconsin about the plaintiff's treatment. *Id.* at 476–77, 485 N.W.2d 614. Finding that § 801.05(4) was inapplicable, the court said that section "unambiguously require[d] some activity other than the act or omission outside of Wisconsin giving rise to an injury here" and that there was no evidence of that the defendant had engaged in solicitation or service activities. *Id.* at 479–80, 485 N.W.2d 614.

Like the defendants in these cases cited above, Mr. Bulso cannot be said to have engaged in the solicitation of business or the providing of services within Wisconsin. He admits in his affidavit that he did come to Wisconsin three times in connection with the underlying litigation and that he had a "small number" of telephone conversations with the local counsel in Wisconsin. There is no evidence, however, to suggest that these activities were for the purpose of soliciting business from Wisconsin residents, or even more specifically, from Mr. Nelson.

The *Pavlic* case is especially relevant because the defendant in that case had *some* contacts with Wisconsin, but those contacts were a result of the defendant's performing his duties for his corporation. It is not disputed that Mr. Bulso came to Wisconsin a few times, but his purpose in coming to Wisconsin was to secure a judgment for his *out-of-state* client, not to solicit business or financial benefit from a Wisconsin citizen. Furthermore, § 801.05(4) requires that the defendant's solicitation or service activities be conducted *at the time* of the injury in Wisconsin, and there is no allegation that Mr. Bulso engaged in any such activity at the time of Mr. Bulso's arrest and court appearances. Finally, there is no argument that products serviced or manufactured by Mr. Bulso were used within this state in the ordinary course of trade. Therefore, § 801.05(4)(b) does not apply.

Mr. Bulso's activities in Wisconsin, performing limited services in Wisconsin for his non-Wisconsin client, is not the sort contemplated by § 801.05(4). For that reason, I decline to find that this section of the statute extends jurisdiction over the defendant. Because neither § 801.05(3) nor § 801.05(4) apply to Mr. Bulso, I cannot find that the Wisconsin long-arm statute allows this court to extend jurisdiction over the defendant.

### B. Due Process

As mentioned above, the Wisconsin long-arm statute is to be coextensive with the due process clause of the Fourteenth Amendment. *Mid–America Tablewares, Inc. v. Mogi Trading Co.,* 100 F.3d 1353, 1359 (7th Cir.1996); *State ex rel. N.R.Z. v. G.L.C.,* 152 Wis.2d 97, 105, 447 N.W.2d 533 (1989). My finding that the long-arm statute does not apply to Mr. Bulso is therefore an implicit finding that the due process clause would also not allow this court to extend jurisdiction over the defendant. Nevertheless, I will comment on the question of whether the plaintiff has satisfied the Fourteenth Amendment requirements for personal jurisdiction.

A court may only exercise personal jurisdiction over a defendant, within the confines of due process, when the defendant has "minimum contacts" with that forum, *Hanson v. Denckla,* 357 U.S. 235, 251, 78 S.Ct. 1228, 1238–39, 2 L.Ed.2d 1283 (1958), and when such an exercise would not "offend 'traditional notions of fair play and substantial justice,'" *Asahi Metal Indus. Co. v. Superior Court,* 480 U.S. 102, 113, 107 S.Ct. 1026, 1032–33, 94 L.Ed.2d 92 (1987) (*quoting International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

■ The amount or type of minimum contacts that the defendant must have with the forum state depends on whether the court would be asserting specific or general jurisdiction. General jurisdiction is allowed even when the suit does not arise from the defendant's relationship with the state. *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15 n. 8 & 9, 104 S.Ct. 1868, 1872 n. 8 & 9, 80 L.Ed.2d 404 (1984), but only over a defendant who has "continuous and systematic" contacts with the forum state. *Id.* at 416, 104 S.Ct. at 1872–73. Even if Mr. Nelson did argue that the exertion of general jurisdiction would be appropriate, I would not agree. Mr. Bulso's few work-related trips to Wisconsin, on behalf of his non-Wisconsin client, along with the college tennis tournaments, do not amount to his having a continuous and systematic contact with the state.

■ Specific jurisdiction is proper when the case itself arises out of or is related to the defendant's contact with the state. The question of whether a court may exert specific jurisdiction is less encompassing than the general jurisdiction question—it focuses on "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204, 97 S.Ct. 2569, 2579, 53 L.Ed.2d 683 (1977). Thus, when a defendant's relationship with the state is very limited, yet related to the plaintiff's cause of action, a court may still find that the defendant has minimum contacts for the purpose of that case. *See Logan Productions, Inc. v. Optibase, Inc.,* 103 F.3d 49, 52 (7th Cir.1996) ("[A] state may exercise specific jurisdiction when the defendant has a lesser degree of contact with the state, but the litigation arises out of or is related to those contacts."); 4 *Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure* § 1067 (2d ed.1987).

The court of appeals for the seventh circuit recently elaborated on what the nature of the relationship between the defendant, the forum, and the litigation must be in order for a court to exercise specific jurisdiction. In interpreting when an action "arises out of" or is "related to" the defendant's contact with the forum, the court said:

> [I]t is only the "dealings *between the parties in regard to the disputed contract*" that are relevant to minimum contacts analysis.... To be relevant for personal jurisdiction, however, past contacts involving the forum state should either bear on the substantive legal dispute between the parties or inform the court regarding the economic substance of the contract.

*RAR, Inc. v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1278 (7th Cir.1997) (emphasis in original) (quoting *Vetrotex Certainteed Corp. v. Consolidated Fiber Glass Prods. Co.,* 75 F.3d 147, 153 (3d Cir.1996)). The court of appeals also described the "related to" test as requiring a "substantive relationship" between the defendant's contacts with the forum and the legal dispute. *RAR, Inc.,* 107 F.3d at 1279.

■ Mr. Bulso's three most recent trips to Wisconsin were related to the *underlying litigation* between Mr. Nelson and Mr. Bulso's client, ORL, but it is not obvious that these trips are substantively related to the current legal dispute between Mr. Nelson and Mr. Bulso. Mr. Bulso states that he came to Wisconsin to oppose Mr. Nelson's filing of bankruptcy and to take a deposition regarding Mr. Nelson's assets. While it could be argued that the defendant took these actions on behalf of his client and that he also spoke to the district attorney and grand jury on behalf of his client, it does not follow that the trips to Wisconsin are related to Mr. Bulso's disclosing potentially criminal activity about Mr. Nelson to the Tennessee authorities. As discussed at length above, Mr. Nelson claims that his injuries arise from Mr. Bulso's actions in Tennessee, not from actions taken by Mr. Bulso in Wisconsin. There is no allegation that the defen-

dant's asset deposition or appearances in the bankruptcy court are in any way part of the malicious prosecution, abuse of process, or defamation claims.

Therefore, these contacts, standing alone, could not establish specific jurisdiction. However, the plaintiff also argues, as seen above, that the defendant's intention of harming Mr. Nelson in Wisconsin is a contact that is sufficient to establish jurisdiction. Specifically, Mr. Nelson maintains that contacts exist because Mr. Bulso knew or should have known that there would be an arrest and attempted extradition in Wisconsin and that Mr. Nelson would be defamed in his home state. As a result, Mr. Nelson argues, Mr. Bulso availed himself of the laws of Wisconsin.

In order for a defendant to have established minimum contacts with a forum, it must have "purposefully availed" itself of that forum in a way that the defendant can reasonably anticipate being sued there. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474–75, 105 S.Ct. 2174, 2183–84, 85 L.Ed.2d 528 (1985); *see World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490 (1980). "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 1240, 2 L.Ed.2d 1283 (1958). This requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts." *Burger King,* 471 U.S. at 475, 105 S.Ct. at 2183.

Many of the cases cited in the above discussion of the long-arm statute also support the proposition that Mr. Bulso's knowledge regarding the place of injury is not enough to satisfy the requirements of the due process clause. Indeed, if a court cannot find that the defendant engaged in any local act or omission or solicitation or service activities within the state, then it would be difficult for the court find that the same out-of-state activities fulfill the due process requirements imposed on personal jurisdiction.

Assuming that Mr. Bulso did intend that Mr. Nelson be arrested and defamed in Wisconsin and brought before a Wisconsin judge, I could not find that such knowledge amounts to the purposeful availment of the benefits and protections of Wisconsin laws. Mr. Nelson asks what greater invocation of Wisconsin law could there be than "a foreign defendant who intentionally begins a process that he knows will require the assistance of Wisconsin authorities." (Pl.'s Opposition Brief at p. 12–13). He also states that Mr. Bulso "cannot seriously argue that due process should insulate him from being hailed [sic] into a Wisconsin court." (Pl.'s Opposition Brief at p. 13). Other than the plaintiff's repetitious allegations, however, that Mr. Bulso purposefully directed his actions at a Wisconsin resident, there is no cognizant claim that he took advantage of Wisconsin law. As shown above, because the defendant had no control over the grand jury's decision to indict Mr. Nelson, he did not avail himself of the benefit of Wisconsin law. *See Wallace v. Herron,* 778 F.2d 391, 394 (7th Cir.1985); *Denmark v. Tzimas,* 871 F.Supp. 261, 267 (E.D.La.1994).

The plaintiff has not met his burden of proving that the Wisconsin long-arm statute and the due process clause should reach the out-of-state defendant. Therefore, this action will be dismissed for lack of personal jurisdiction, pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure.

The defendant brought an alternative motion to change venue, but given my finding that this court does not have personal jurisdiction over Mr. Bulso, I will not address the alternative motion and will dismiss it as moot.

## ORDER

Therefore, IT IS ORDERED that the defendant's motion to dismiss for lack of personal jurisdiction, pursuant to Rule 12(b)(2), Federal Rules of Civil Procedure, be and hereby is granted.

IT IS ALSO ORDERED that the defendant's motion to transfer venue be and hereby is dismissed as moot.

**1252**

IT IS ORDERED that the clerk of court be and hereby is directed to dismiss this action, with prejudice and with costs.