IN RE the FOREIGN JUDGMENT OF: Nancy Ann DAVANIS, Petitioner-Appellant,

v.

George M. DAVANIS, Respondent.

Court of Appeals

*No. 85–0991. Argued April 25, 1986.—Decided June 18, 1986.*

(Also reported in 392 N.W.2d 108.)

319

For the petitioner-appellant, there were briefs and oral argument by *Robert M. Koch* of *Koch, Baganz, Koch & Clark* of Brookfield.

For the respondent, there were briefs and oral argument by *Marvin A. Margolis* of *Margolis & Cassidy* of Milwaukee.

An amicus curiae brief was filed by *Bronson C. La Follett*, attorney general, and Donald P. Johns, assistant attorney general.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.    This action was commenced under the Revised Uniform Reciprocal Enforcement of Support Act (1968) (RURESA), sec. 52.10, Stats.[1] Nancy Ann Davanis filed a summons and petition with a Wisconsin court requesting registration in Wisconsin of a California divorce judgment divorcing her from George M. Davanis. Subsequent to the registration of the California divorce judgment in Wisconsin, Nancy filed an order to show cause requiring George to, *inter alia,* show cause why an order increasing the amount of his child support payments should not be entered. Nancy appeals from an "Order & Judgment" dismissing her order to show cause.

On appeal, Nancy contends that George failed to timely and properly object to jurisdiction in the trial court and has thereby waived any objection to the Wisconsin court's exercise of jurisdiction over his person. She further contends that the Wisconsin court may exercise personal jurisdiction over George.

We conclude that a challenge to personal jurisdiction need not be made at the time the foreign support order is registered, provided that no affirmative relief is requested in addition to mere registration. Because we are persuaded that George's jurisdictional challenge was both timely and proper, we find that he has not waived his objection to the Wisconsin court's exercise of jurisdiction over his person. We further conclude that George does not have sufficient minimum contacts with the state of Wisconsin; therefore, Wisconsin does not have personal jurisdiction over George. Accordingly, we affirm the "Order & Judgment" of the trial court.

---

[1] We note that sec. 52.10, Stats., has been renumbered to sec. 767.65, Stats. Sections 1120–1123, 1985 Wis. Act 29. This appeal was taken prior to this change; therefore, all references hereafter will be to sec. 52.10.

Nancy and George were married in October 1970 in Hales Corners, Wisconsin. The parties' marriage certificate lists George's residence in San Francisco, California, at the time of the marriage and shows him to have been in the U.S. Armed Forces at that time.[2] On January 17, 1971, the parties moved to California.

Nancy and George were divorced by the Superior Court of California in February 1979. At that time, both parties were California residents. While the California divorce proceeding was pending, Nancy moved to Wisconsin along with the parties' minor child.

On November 2, 1983, Nancy filed a summons and petition with the Waukesha county circuit court requesting registration in Waukesha county of the California divorce judgment, pursuant to sec. 52.10(39), Stats., of RURESA. On March 20, 1984, the Waukesha county circuit court entered an order confirming the registration of the California judgment and support order in Wisconsin. Notice of registration and confirmation of registration was filed on March 23, 1984 and George was served by mail. George filed no response to the registration procedure and made no appearance.

On September 11, 1984, the circuit court judge signed an order, upon a motion and supporting affidavit filed by Nancy, requiring George to, *inter alia,* show cause why an order increasing the monthly child support payments should not be entered. Nancy's supporting affidavit alleged a substantial change in circumstances.

On January 11, 1985, George's counsel sent a letter to the circuit court in anticipation of the hearing on the order to show cause set for January 16, contending

---

[2] We take judicial notice of the parties' marriage certificate, pursuant to sec. 902.01(2) and (3), Stats.

that the Wisconsin court did not have jurisdiction to proceed with a hearing to increase support. A copy of this letter was sent to counsel for Nancy.[3] On January 15, 1985, George filed a brief in support of a motion to dismiss for want of personal jurisdiction under Wisconsin's long-arm statute, sec. 801.05, Stats. On March 14, 1985, the trial court issued a written decision holding that the circuit court was without the personal jurisdiction over George necessary to proceed in the matter.

Nancy contends that George has failed to timely and properly object to the jurisdiction of the trial court; therefore, he has waived any defense based on lack of personal jurisdiction. First, she claims that George's failure to object to jurisdiction in the registration proceeding or by petition to vacate the registration pursuant to sec. 52.10(40)(b), Stats., constitutes a waiver of objection. Second, Nancy claims that George failed to properly object to jurisdiction because he did not file his objection by written motion.

We are guided in our analysis of these issues by the purposes of RURESA "to improve and extend by reciprocal legislation the enforcement of duties of support." Section 52.10(1), Stats. *See also O'Halloran v. O'Halloran,* 580 S.W.2d 870, 871 (Tex. Civ. App. 1979). The Act itself creates no duties of family support, but is concerned solely with the enforcement of existing du-

---

[3] A letter dated December 12, 1984, sent by Nancy's counsel to George's counsel, states: "This will confirm our telephone conversation of December 10, 1984, in which you advised me that you would be mailing a photocopy of the United States Supreme Court case in *Kulko* upon which you are basing your position that there is no jurisdiction over the respondent. Please send this to me as soon as possible for my review."

ties when the person to whom a duty is owed is in one state and the person owing the duty is in another.

URESA was first enacted when conventional judicial proceedings had proved unsatisfactory, largely because the defaulting spouse-obligor was frequently outside the jurisdiction and the obligee could rarely afford to travel to distant states and litigate the question of support obligations. *Id.* The Act was designed to avoid such disadvantages by allowing the obligation of support to be established in the obligee's home state and by then allowing that right to be enforced in a foreign state by a simplified procedure without having to bring an independent action in the foreign state. *Id.* at 872.

We first address Nancy's argument that an objection to personal jurisdiction must be made within twenty days after the mailing of notice of registration under sec. 52.10(40)(b), Stats., or it is waived. We note that no Wisconsin appellate court decision dealing with this issue has been brought to our attention.[4]

Section 52.10(39)(a), Stats., provides that an obligee seeking to register a foreign support order in a Wisconsin court must transmit certain documents to the clerk of the court. Upon receipt of the documents, the

---

[4] Nancy cites *Monson v. Monson,* 85 Wis. 2d 794, 800–01, 271 N.W.2d 137, 140 (Ct. App. 1978), to support her claim that jurisdictional challenges must be made within twenty days after notice of registration under sec. 52.10(40)(b), Stats., to "expedit[e] the legal process so as to make available to the obligee the benefits of a support order with minimum expense and delay." We distinguish *Monson* from this case on the basis that *Monson* involved a situation where the *obligor* requested the court to modify an original order in the state where the obligor resided. Here, the *obligee* is bringing a motion to increase child support payments in the state where the obligee resides. Moreover, no jurisdictional issue similar to that presented in this case was at issue in *Monson.*

clerk files them in the registry of foreign support orders. *Id.* Such filing constitutes registration. *Id.*

Section 52.10(40)(a), Stats., provides that "[u]pon registration the registered foreign support order shall be treated in the same manner as a support order issued by a court of this state. It has the same effect and is subject to the same procedures, defenses and proceedings for reopening, vacating or staying as a support order of this state and may be enforced and satisfied in like manner." Section 52.10(40)(b) provides, "The obligor has 20 days after the mailing of notice of the registration in which to petition the court to vacate the registration or for other relief. If he does not so petition the registered support order is confirmed." Section 52.10(40)(c) concerns the hearing to enforce the registered support order.

In *Pinner v. Pinner,* 234 S.E.2d 633, 635–36 (N.C. Ct. App. 1977), the court construed identical provisions of RURESA as establishing a two-step procedure for registration and enforcement: first, registration of the order and, if required, a hearing on whether to vacate the registration or grant the "obligor" other relief and, second, enforcement of the order. *Id.* The *Pinner* court reasoned that the definitions of "obligor" and "obligee" under RURESA, sec. 52.10(2)(f) and (g), Stats., leads to the conclusion that the obligee has the option to merely register the order or to register and enforce simultaneously. Section 52.10(2)(f) defines an obligee, in pertinent part, as "a person . . . [who] has commenced a proceeding for enforcement of an alleged duty of support or for registration of a support order." Section 52.10(2) (g) defines an obligor, in pertinent part, as "any person . . . against whom a proceeding for the enforcement of

a duty of support or registration of a support order is commenced."

Having concluded that registration and enforcement are separate procedures, the *Pinner* court considered whether jurisdiction over the person or property of the obligor is necessary for valid registration. The court held that the mere registration of a foreign support order is a ministerial duty of the clerk and that the court must determine whether jurisdiction exists over the person at the time of enforcement. *Id.* at 636.

> By that act no court or agency of the state is purporting to exercise power over the obligor or his property. Registration does not prejudice any rights of the obligor; it merely changes the status of the foreign support order by allowing it to be treated the same as a support order issued by a court of North Carolina. . . . Once the order is so treated the obligee or the obligor may request modifications in the order, and when the obligee attempts to enforce the order, the court must determine whether jurisdiction exists over the person or property of the obligor and what amount, if any, is in arrears. W. Brockelbank, *Interstate Enforcement of Family Support (The Runaway Pappy Act)*, pp. 77–87 (Infausto ed. 1971).

*Id.* The *Pinner* court held that personal jurisdiction is not necessary for registration of a foreign support order under URESA and that language in a confirmation order purporting to find jurisdiction was superfluous and did not bind the defendant in subsequent enforcement proceedings. *Id.; Fleming v. Fleming,* 271 S.E.2d 584, 586 (N.C. Ct. App. 1980).

■

We find the reasoning of the *Pinner* court persuasive and we hold that jurisdiction over the person is not necessary for registration of a foreign support order. We can find no reason for requiring an obligor to object to the state's jurisdiction at the time of registration when no affirmative relief is requested. In our view, sec. 52.10(40)(b), Stats., provides a procedure for entering objections to the registration itself; it does not require that challenges to jurisdiction be made at the time of registration.[5] Mere registration without further action does not subject the obligor to any peril which would motivate a reasonable person to come forward and object to the court's jurisdiction. We therefore hold that an obligor may raise a challenge to the court's exercise of personal jurisdiction at a subsequent enforcement proceeding.[6]

■

We reject Nancy's argument that George's jurisdictional challenge was improperly made because he failed to file a written motion objecting to jurisdiction pursuant to sec. 802.06, Stats. Our review of the record shows that on January 11, 1985, counsel for George sent a letter to the circuit court, with a copy to Nancy's counsel, contending that the Wisconsin court did not have personal jurisdiction over George. On January 15,

---

[5] The attorney general, as *amicus curiae,* argues that challenges to jurisdiction may be made either at the time of registration under sec. 52.10(40)(b), Stats., or at a subsequent enforcement proceeding. We do not decide that issue.

[6] We note that sec. 52.10(32), Stats., also supports our position as it states, "Participation in any proceeding under this section does not confer jurisdiction upon any court over any of the parties thereto in any other proceeding."

1985, George filed a brief in support of a motion to dismiss for want of personal jurisdiction. The trial court's decision issued subsequent to the hearing on the order to show cause, held January 16, 1985, stated, "At this hearing, the court entertained arguments regarding the jurisdictional challenge presented by Attorney Margolis on behalf of George Davanis. . . . The sole issue presented for determination is whether the court has personal jurisdiction of George M. Davanis in this matter."

It is apparent that the trial court construed George's letter and brief as a motion challenging the court's jurisdiction over his person. Wisconsin's rules of pleading and practice are to be liberally construed to secure a just, speedy and inexpensive determination of every action. *Welzien v. Kapec,* 98 Wis. 2d 660, 661, 298 N.W.2d 98, 99 (Ct. App. 1980); sec. 801.01(2), Stats. We therefore conclude that the trial court properly construed George's letter and brief as fulfilling the statutory requirements for the filing of a motion challenging personal jurisdiction.

Next, Nancy claims that the Wisconsin court has personal jurisdiction over George. She contends that the following facts of record establish that George had sufficient minimum contacts with Wisconsin for personal jurisdiction to attach: the parties were domiciled in Wisconsin prior to their marriage; the parties were married in Wisconsin; the parties continued to be domiciled in Wisconsin after they were married; during the pendency of the actual divorce action, Nancy was domiciled in and was a resident of Wisconsin, as was the parties' minor child; the stipulation later incorporated into the California divorce judgment was sent to

Nancy in Wisconsin and was executed in Wisconsin; at the time the stipulation was executed, Nancy and the minor child had already been residents of Wisconsin for over one year; the agreement provided for custody of the minor child to be with Nancy and for her to receive child support payments in Wisconsin; George provided for travel to and from Wisconsin for the minor child; and George returned to Wisconsin while the parties were still married and inquired as to employment in Wisconsin.[7]

The due process clause of the fourteenth amendment operates as a limitation on the jurisdiction of state courts to enter judgments affecting rights or interests of nonresident defendants. *Kulko v. Superior Court,* 436 U.S. 84, 91 (1978). A valid judgment imposing a personal obligation or duty in favor of the plaintiff may be entered only by a court having jurisdiction over the person of the defendant. *Id.*

The existence of personal jurisdiction depends upon the presence of reasonable notice to the defendant that an action has been brought and a sufficient connection between the defendant and the forum state as to make it fair to require defense of the action in the forum. *Id.* at 91; *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945). Due process requires that the

[7] Nancy claims that the trial court considered evidence which was not in the record in deciding the jurisdictional question. Nancy contends that the trial court improperly relied upon a machine copy of the marriage certificate in concluding that George was not a resident of Wisconsin and that George was in the army at the time of the marriage. Because we have judicially noticed the marriage certificate, we reject Nancy's argument.

defendant have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe* at 316.

Section 801.05, Stats., Wisconsin's long-arm statute, represents an attempt to codify the rules regarding minimum contacts which were developed in the line of United States Supreme Court cases beginning with *International Shoe. Lincoln v. Seawright,* 104 Wis. 2d 4, 10, 310 N.W.2d 596, 599 (1981). The burden is on the plaintiff to establish jurisdiction under the long-arm statute. *Id.* at 9, 310 N.W.2d at 599. However, the statute is to be liberally construed in favor of exercising jurisdiction. *Id.* While compliance with the language of sec. 801.05 is *prima facie* compliance with the due process requirements, the plaintiff's burden of proof is not conclusively satisfied in all cases upon a showing of compliance with the statute.[8] *Id.* at 10, 310 N.W.2d at 599.

Although compliance with sec. 801.05, Stats., raises a presumption of compliance with due process, this presumption may be rebutted by a defendant, especially through the use of the five-factor test for due process, *id.,* first stated in *Zerbel v. H.L. Federman & Co.,* 48 Wis. 2d 54, 64–66, 179 N.W.2d 872, 878–79 (1970), *appeal dismissed,* 402 U.S. 902 (1971). In *Zerbel,* the supreme court adopted the following factors for a due process analysis in personal jurisdiction cases: the

---

[8] Section 767.05(1), Stats., provides, "A court of this state having jurisdiction to hear actions affecting the family may exercise jurisdiction as provided under ch. 801 except that personal jurisdiction is limited by s. 801.05(11)."

quantity of contacts with the state, the nature and quality of the contacts, the source of the cause of action, the interest of Wisconsin in the action, and convenience. *Id.*

Where no jurisdiction over the obligor is possessed by the circuit court, URESA cannot be relied on as granting additional powers to modify a foreign support order. *Fitzwater v. Fitzwater,* 294 N.W.2d 249, 251 (Mich. Ct. App. 1980). Each case arising under the statute poses a problem of statutory construction within the constitutional framework and its application to the factual background of each individual case. *Zerbel,* 48 Wis. 2d at 60, 179 N.W.2d at 875. On appeal, the trial court's findings of fact will not be set aside unless clearly erroneous. Section 805.17(2), Stats. We are not bound, however, by the trial court's ultimate legal conclusion that George had insufficient contacts; we decide that question *de novo. See First National Leasing Corp. v. City of Madison,* 81 Wis. 2d 205, 208, 260 N.W.2d 251, 253 (1977).

The *Kulko* case presents a factual scenario similar to that presented here. In *Kulko,* a California resident attempted to modify in a California court a foreign divorce judgment against a New York resident by requesting an increase in child support payments. The Supreme Court held that the California court did not have personal jurisdiction over the New York resident. It stated that to hold the New York resident's visits to California on two occasions, once in 1959 for a three-day military stopover on his way to Korea and again in 1960 for a twenty-four hour stopover on his return from Korean service, as a basis for asserting personal jurisdiction over unrelated actions arising in the fu-

331

ture "would make a mockery of the limitations on state jurisdiction imposed by the Fourteenth Amendment." *Id.,* 436 U.S. at 93. The Court further stated that the parties' California marriage by itself could not support a California court's exercise of jurisdiction over a spouse who remains a New York resident in an action relating to child support where the parties married in California for reasons of convenience and spent their entire married life in New York. *Id.* Finally, the Court held that by agreeing to allow his children to live with their mother in California for three months a year, the appellant did not purposefully avail himself of the privilege of conducting activities within the forum state. *Id.* Basic considerations of fairness persuaded the Court that the appellant's state of domicile was the proper forum mainly because the appellant remained in the state of marital domicile, while the appellee moved across the continent. *Id.* at 97–98.

Here, the trial court relied on *Kulko* and determined that George did not have the minimum contacts with the state of Wisconsin necessary to invoke jurisdiction over the person. This determination was based upon the following findings of fact:

> [T]he parties were married in Wisconsin while George was on active duty with the army. Subsequently, the parties moved to California and George has only returned to Wisconsin for two-week vacation periods on a couple of occasions. Furthermore, George has never been a resident of the State of Wisconsin nor has he had any contacts whatsoever with Wisconsin since leaving for California other than those previously mentioned.

Our review of the record and the certificate of marriage persuades us that the trial court's factual findings are not clearly erroneous.[9] The parties' marriage certificate lists George's residence in San Francisco, California, at the time of the marriage. The marriage certificate also shows that George was in the U.S. Armed Forces at that time. In her affidavit, Nancy averred that the parties lived in Wisconsin for approximately one year and then moved to California on January 17, 1971. The parties were divorced in California and at that time, both parties were California residents. Nancy further averred that the parties returned to Wisconsin with their minor child for at least two weeks in 1971, 1973 and 1976.

Our review of the facts of record persuades us that George does not have sufficient contacts with Wisconsin for personal jurisdiction to attach. We are not persuaded that the parties' marriage in Wisconsin while George was in the army or George's visits to Wisconsin on three occasions establish sufficient contacts with Wisconsin for personal jurisdiction to attach. Furthermore, we hold that by stipulating to child custody in Wisconsin, visitation in Wisconsin, making support payments in Wisconsin and the property division, George did not purposefully avail himself of the privilege of conducting activities within Wisconsin. *Cf. Kulko*, 436 U.S. at 93. To find jurisdiction in this state

---

[9] We recognize that Nancy averred that George was a resident of the state of Wisconsin for approximately three months, from October 3, 1970 until January 17, 1971. Even if the trial court's finding that George was never a resident of Wisconsin is erroneous, our conclusion that George does not have sufficient contacts with Wisconsin would not change.

on these bases would discourage parents from entering into child custody and visitation agreements. Finally, basic considerations of fairness persuade us that George's state of domicile is the proper forum within which to bring this action because George has remained in the state of marital domicile, while Nancy moved to Wisconsin. In our view, maintenance of the action in Wisconsin offends traditional notions of fair play and substantial justice.

*By the Court.*—Order affirmed.