IN RE the MARRIAGE OF:

Theresa Ann BUSHELMAN, Petitioner-Respondent,

v.

William Henry BUSHELMAN, Respondent-Appellant.

Court of Appeals

*No. 00–0670. Submitted on briefs November 7, 2000.—Decided May 3, 2001.*

## 2001 WI App 124

(Also reported in 629 N.W.2d 795.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *Richard J. Ward* of *Stern, Skiles & Ward* of Madison.

On behalf of the petitioner-respondent, the cause was submitted on the briefs of *Kimberly P. Sebranek* of *Eustice, Laffey & Shellander, S.C.* of Sun Prairie.

Before Dykman, P.J., Vergeront and Roggensack, JJ.

¶ 1. VERGERONT, J. William Bushelman, a resident of Arizona at the time Theresa Bushelman filed this divorce action, moved to dismiss on the grounds of lack of personal jurisdiction. He appeals the trial court's order denying his motion, contending there is no statutory basis for jurisdiction over his person and his contacts with Wisconsin are insufficient to satisfy due process.[1] We conclude William's contacts with Wisconsin do not satisfy the requirements of either WIS. STAT. § 801.05(1)(d) (1999–2000)[2] or the due process clause, and we therefore reverse.

---

[1] We granted William's petition for leave to appeal the trial court's order.

[2] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise indicated.

## BACKGROUND

¶ 2. The relevant facts were established either by the parties' affidavits or by evidence Theresa presented at an evidentiary hearing, and most are not in dispute. Theresa and William were married in April 1989 in Arizona and their two children were born there, the first in 1990 and the second in 1991. Theresa was raised in Wisconsin, but William has never resided here. In May 1991, and again in May 1993, she and William traveled to Wisconsin to visit her sister and other relatives. They brought their older child with them on the first trip and stayed for one week to ten days; on the second trip they brought both children and stayed ten days. In August 1994, Theresa came to Wisconsin to visit her sister with the two children and was here five days. During that time she was hospitalized, and William came to Wisconsin to help her and the two children return to Arizona, staying here two days.

¶ 3. Sometime after August 1994 and before October 1996, William was sentenced to prison and incarcerated. Theresa and the children moved to Erie, Pennsylvania, and then, in October 1996, while William was still incarcerated, they moved to Wisconsin. They have resided here since. While William was in prison, he called the children once a week in Wisconsin, and after he was released, he called them twice a month, also speaking to Theresa. He also frequently called Theresa's sister to see how Theresa and the children were doing. He has written many letters to Theresa since she has lived in Wisconsin. In April 1998, William began sending child support of $200 to $250 each month. He came to Wisconsin to visit Theresa and the children in October 1998 and stayed one week.

¶ 4. Theresa filed this divorce action on May 26, 1999, seeking custody, child support, maintenance, property division, and attorney fees; she filed a motion for a temporary order at the same time. William was served on July 8, 1999, with the summons, petition for divorce, and motion in Arizona where he was then residing. He moved to dismiss on the ground of lack of personal jurisdiction.

¶ 5. William did not appear at the hearing on the motion but was represented by counsel. Theresa, her sister, and her brother-in-law presented testimony that established the facts recited above. In addition, the court accepted into evidence the cover sheet of a case report from the Sun Prairie Police Department indicating that on August 29, 1994, William asked an officer to accompany him to pick up his two children from Theresa's sister's house. On cross-examination, Theresa testified it was her decision and William's decision that she move to Wisconsin with the children; he said "it was fine that I moved to Wisconsin"; he directed her to move to Wisconsin; and he told her to take the children to Wisconsin and take care of them there. This contradicted the averment in William's affidavit that he "did not direct that my children reside in the state of Wisconsin."

¶ 6. The court recognized there was a dispute over whether William had directed Theresa to live in Wisconsin or had merely consented that she do so. It found William had "supported Tess and the kids to come to this community so that she can receive support from her family." The court concluded it did have personal jurisdiction over William under WIS. STAT. § 801.05(1)(d) because William had carried on substantial and not isolated activities within the state. The court also determined that William's visits to Wiscon-

sin, his consent that Theresa live here with the children, his phone calls, letters, and payment of child support, and his availing himself of the services of the Sun Prairie Police Department were activities related to his family, which was the subject of the divorce action, and the court decided these activities were sufficient to meet the constitutional standard for subjecting William to the jurisdiction of the courts of Wisconsin.

## DISCUSSION

¶ 7. In order for a Wisconsin court to have jurisdiction over a person, there must be a statutory basis for personal jurisdiction, and the application of that statute to the individual must meet the requirements of due process. *Lincoln v. Seawright*, 104 Wis. 2d 4, 10, 310 N.W.2d 596 (1981). Due process requires that in order for a court to have jurisdiction over the defendant, there must be sufficient contact between the defendant and the forum state to make it fair that the defendant have to defend the action in that state. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).[3] Because WIS. STAT. § 801.05, Wisconsin's "long-arm statute," represents an attempt to codify the rules regarding minimum contacts for personal jurisdiction established in *International Shoe*, compliance with a section of this statute is "prima facie compliance" with the due process requirements. *Lincoln*, 104 Wis. 2d at 10. However, the presumption of compliance with due process arising from § 801.05 may be rebutted by a

---

[3] The other requirement of due process—that there be reasonable notice to the defendant that an action has been brought, *see International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)—is not at issue in this case.

defendant, and courts have used a five-factor test to analyze the substantiality of the defendant's contacts for due process purposes: the quantity of the contacts, the nature, and quality of the contacts, the source of the cause of action and its connection with those contacts, the interest of Wisconsin in the action, and convenience to the parties. *Lincoln*, 104 Wis. 2d at 11 (citing *Zerbel v. H.L. Federman & Co.*, 48 Wis. 2d 54, 64–65, 179 N.W.2d 872 (1970)). The burden is on the party filing the action to establish personal jurisdiction. *Id.* at 9.

¶ 8. William contends on appeal, as he did before the trial court, that there is no statutory basis for personal jurisdiction because in an action affecting the family, WIS. STAT. § 801.05(1)(d) applies only to activities that are business or employment related, and there is no other applicable statutory basis. Alternatively, he argues that even if § 801.05(1)(d) is not so construed, its application to him violates due process requirements.

¶ 9. We consider first William's argument that WIS. STAT. § 801.05(1)(d) applies only to business or employment related activities when the action is one affecting the family. WISCONSIN STAT. § 767.05(1) provides that "[a] court of this state having jurisdiction to hear actions affecting the family may exercise jurisdiction as provided under ch. 769 [Uniform Interstate Child Support Act] or 801." Theresa did not contend in the trial court that any jurisdictional provision in WIS.

STAT. ch. 769[4] was applicable to William, and we therefore turn our attention to WIS. STAT. ch. 801.[5]

¶ 10. WISCONSIN STAT. § 801.05(11) provides in part:

[4] WISCONSIN STAT. § 769.201 provides:

**Bases for jurisdiction over nonresident.** In a proceeding under this chapter to establish, enforce or modify a support order or to determine parentage, a tribunal of this state may exercise personal jurisdiction over a nonresident individual, or the individual's guardian or conservator, if any of the following applies:

(1) The individual is personally served with a summons or other notice within this state.

(2) The individual submits to the jurisdiction of this state by consent, by entering a general appearance or by filing a responsive document having the effect of waiving any contest to personal jurisdiction.

(3) The individual resided with the child in this state.

(4) The individual resided in this state and provided prenatal expenses or support for the child.

(5) The child resides in this state as a result of the acts or directives of the individual.

(6) The individual engaged in sexual intercourse in this state and the child may have been conceived by that act of intercourse.

(7) The individual asserted parentage in a declaration of paternal interest filed with the department of health and family services under s. 48.025 or in a statement acknowledging paternity filed with the state registrar under s. 69.15 (3) (b) 1. or 3.

(8) There is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction.

[5] We asked the parties to submit supplemental briefing on the question of whether WIS. STAT. § 769.201(5) or any other subsection of § 769.201 is sufficient to establish jurisdiction for purposes of any portion of the action. However, we have decided not to address any basis for jurisdiction other than WIS. STAT. § 801.05(1)(d) because that was the only basis argued by Theresa in the trial court and the factual record necessary for the application of § 769.201(5) was, as a result, not fully developed.

CERTAIN MARITAL ACTIONS. In addition to personal jurisdiction under sub. (1) and s. 801.06,[6] in any action affecting the family, except for actions under ch. 769, in which a personal claim is asserted against the respondent commenced in the county in which the petitioner resides at the commencement of the action when the respondent resided in this state in marital relationship with the petitioner for not less than 6 consecutive months within the 6 years next preceding the commencement of the action and the respondent is served personally under s. 801.11. (Footnote added.)

Section 801.05(1), to which § 801.05(11) refers, provides:

**Personal jurisdiction, grounds for generally.** A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to s. 801.11 under any of the following circumstances:

(1) LOCAL PRESENCE OR STATUS. In any action whether arising within or without this state, against a defendant who when the action is commenced:

(a) Is a natural person present within this state when served; or

(b) Is a natural person domiciled within this state; or

(c) Is a domestic corporation or limited liability company; or

(d) Is engaged in substantial and not isolated activities within this state, whether such activities are wholly interstate, intrastate, or otherwise.

---

[6] WISCONSIN STAT. § 801.06 relates to counterclaims and to waiver or the defense of lack of jurisdiction over the person. This section is not involved in this appeal.

William contends para. (1)(d) should be construed to provide a basis for personal jurisdiction in an action affecting the family only where the activities are not family related but are business or employment related. He contends that if the activities in Wisconsin are family related, the six months within six years requirement of § 801.05(11) must be met when maintenance is sought, and the requirements of WIS. STAT. § 769.201[7] must be met when child support is sought. This construction is necessary, William contends, because otherwise §§ 769.201 and 801.05(11) are superfluous.

¶ 11. William's argument presents a question of statutory construction, an issue of law which we review de novo. *Wisconsin Dept. of Revenue v. Milwaukee Brewers Baseball Club*, 111 Wis. 2d 571, 577, 331 N.W.2d 383 (1983). The aim of statutory construction is to ascertain the intent of the legislature, and our first resort is to the language of the statute itself. *Kelley Co., Inc. v. Marquardt*, 172 Wis. 2d 234, 247, 493 N.W.2d 68 (1992). If the words of the statute convey the legislative intent, that ends our inquiry. *Id.* We do not look beyond the plain language of a statute to search for other meanings; we simply apply the language to the case at hand. *Id.*

¶ 12. WISCONSIN STAT. § 767.05(1) refers to WIS. STAT. ch. 801 as a jurisdictional alternative to WIS. STAT. ch. 769 for actions affecting the family, and does not specify any section or subsection within ch. 801. WISCONSIN STAT. § 801.05(11) specifically addresses "action[s] affecting the family . . . in which a personal claim is asserted against the respondent." This subsec-

---

[7] See footnote 4.

tion plainly provides that "sub 1" is a basis for jurisdiction in such actions. In *McAleavy v. McAleavy*, 150 Wis. 2d 26, 33, 440 N.W.2d 566 (1989) (decided before § 801.05(11) had been amended to add reference to ch. 769),[8] the supreme court interpreted § 801.05(11) to provide for three independent sources of personal jurisdiction: the six months within six years test stated in that section, and the "additional, alternative sources of personal jurisdiction set forth in sec. 801.05(1) and sec. 801.06." There is no indication in *McAleavy* or the language of § 801.05(11) that § 801.05(1)(d) is not included by the reference to "sub (1)"; nor is there any indication that the application of para. (1)(d) is to be limited in any particular way.

¶ 13. There is also no indication in the language of either WIS. STAT. §§ 801.05(11) or 769.201 that § 801.05(1)(d) is not available as a basis for jurisdiction when child support is sought. Indeed, § 769.201(8) provides that courts of this state have personal jurisdiction over non-residents in proceedings under that chapter if "[t]here is any other basis consistent with the constitutions of this state and the United States for the exercise of personal jurisdiction."

¶ 14. We do not agree with William that WIS. STAT. § 801.05(1)(d) renders WIS. STAT. §§ 801.05(11) and 769.201 superfluous if it may apply to family related activities in Wisconsin. As William points out elsewhere in his brief, under § 801.05(1)(d), *"when the action is commenced"* (emphasis added), the defendant must be "engaged in substantial and not isolated activities within this state." That is a requirement distinct from having lived in Wisconsin for six consecutive months in a marital relationship during the last six

---

[8] This amendment occurred in 1993. 1993 Wis. Act. 326, § 15.

years in Wisconsin. Section 801.05(11) requires no engagement in any activity in Wisconsin at the time the action is commenced: under § 801.05(11) a defendant could have lived in Wisconsin in a marital relationship five years ago for six consecutive months, and have had no contact with Wisconsin since that time. Similarly, a parent may have resided with his child in Wisconsin a number of years ago, thereby providing a basis for jurisdiction under § 769.201(3), but may not have had any contact with this state since then. The fact that there are some situations in which there is jurisdiction under more than one statutory provision does not make one or the other superfluous.

¶ 15. We conclude the plain language of WIS. STAT. §§ 767.05, 801.05(1) and (11), when read together, provide that § 801.05(1)(d) may be a basis for personal jurisdiction over a respondent in a divorce action seeking child support, maintenance, and attorney fees, and the activities that may satisfy the requirements of para. (1)(d) are not limited to business or employment related activities.[9]

---

[9] The parties do not address the statutory basis for personal jurisdiction over William insofar as the petition seeks a judgment of divorce and a division of property. WIS. STAT. § 801.07(5) provides:

> (5) When the action is an action affecting the family under s. 767.02 (1) (a) to (d) and when the residence requirements of s. 767.05 (1m) have been met, a court having subject matter jurisdiction may exercise jurisdiction quasi in rem to determine questions of status if the respondent has been served under s. 801.11 (1).

WISCONSIN STAT. § 801.11(1) requires that, in addition to proper service, there must be grounds for personal jurisdiction under one of the provisions in WIS. STAT. § 801.05. *Mendez v. Hernandez-Mendez*, 213 Wis. 2d 217, 224, 570 N.W.2d 563 (Ct. App. 1997). Paragraph (1)(d) is the only provision of § 801.05 that is arguably relevant to this case. Therefore, its requirements must

¶ 16. We next consider whether William's activities are sufficient to satisfy the requirements of WIS. STAT. § 801.05(1)(d). This subsection is an attempt to define that "presence" of the defendant in a state required as one possible basis for personal jurisdiction consistent with due process under *International Shoe. Hasley v. Black, Sivalls & Bryson, Inc.*, 70 Wis. 2d 562, 576, 235 N.W.2d 446 (1975). This subsection is in contrast to the other possible grounds that are based on specific acts within the state out of which the cause of action arises or to which the cause of action relates. *Id.; see also Nagel v. Crain Cutter Co.*, 50 Wis. 2d 638, 646–47, 184 N.W.2d 876 (1971).[10] Because the subsections of § 801.05 are intended to be consistent with due process, courts may sometimes utilize the due process analysis to resolve a question of statutory construction. *See Hasley*, 70 Wis. 2d at 576–77. For example, if there is a question whether certain activities are "substantial" within the meaning of § 801.05(1)(d), deciding whether due process would allow for personal jurisdiction based on those activities will resolve the question of statutory construction. *Id.* However, we may not ignore the explicit provisions of the long-arm statute.

be satisfied in order to have a statutory basis for personal jurisdiction over William for any of the relief sought in the divorce petition.

[10] For this same reason, when applying the five *Zerbel* factors in a case where jurisdiction is asserted under WIS. STAT. § 801.05(1), the required substantiality of contact is greater than when jurisdiction is asserted under the other subsections, because those "more specific provisions" contemplate situations in which the cause of action "arises out of" or "relates to" the defendant's contacts with the forum state. *Nagel v. Crain Cutter Co.*, 50 Wis. 2d 638, 646–49, 184 N.W.2d 876 (1971).

*Lincoln,* 104 Wis. 2d at 14. While the statute is to be liberally construed in favor of exercising jurisdiction, *id.* at 9, if we interpret the language too broadly, "we risk losing the appropriate minimum contacts which are 'built in' to the statute," *id.* at 14.

¶ 17. On appeal, we do not set aside the trial court's findings of fact unless they are clearly erroneous; however, we review de novo whether those facts meet the statutory and due process requirements for personal jurisdiction. *Paula M.S. v. Neal A.R.,* 226 Wis. 2d 79, 83, 593 N.W.2d 486 (Ct. App. 1999).

¶ 18. Our analysis begins with a discussion of two previous decisions of this court—*Davanis v. Davanis,* 132 Wis. 2d 318, 330, 392 N.W.2d 108 (Ct. App. 1986), and *McCarthy v. McCarthy,* 146 Wis. 2d 510, 431 N.W.2d 706 (Ct. App. 1988)—and the United States Supreme Court decision on which we relied in *Davanis—Kulko v. Superior Court of California,* 436 U.S. 84 (1978). William contends *Davanis* and *Kulko* support his position and that *McCarthy* is "difficult if not impossible to reconcile" with those two decisions. Theresa counters that *McCarthy* supports her position, and the facts in *Davanis* and *Kulko* are distinguishable from those in this case.

¶ 19. In *Kulko,* the issue was whether the father of two children who were living in California with their mother had sufficient contacts with California to satisfy due process. The parties were both residents of and domiciled in New York when they married in 1959 during a three-day stopover in California. The wife returned to New York then, and the husband returned to New York after his military service in a third state. They lived together in New York, where their two children were born, until March 1972. They separated then

and the wife moved to California. Under a written separation agreement signed in New York in September 1972, the children were to remain with their father during the school year and with their mother during summer vacations and holidays, and the husband was to pay $3,000 per year in child support. The wife obtained a divorce in Hawaii based on this legal separation. In December 1973, their daughter told her father she wanted to live with her mother. He bought her a one-way plane ticket to California and she flew to California and began residing with her mother. In January 1976, their son told his mother he wanted to live with her in California so she sent him a plane ticket unbeknownst to the father, and their son flew to California to live with his mother. One month later, the mother filed an action to establish the Hawaii decree as a California judgment and a motion for modification to give her full custody of both children and increase support.

¶ 20. The Supreme Court held that subjecting the father to the jurisdiction of the California courts would violate due process. Due process requires, the Court stated, that the defendant engaged in an act by which he or she purposefully avails himself or herself of the privilege of conducting activities in a foreign state. *Kulko*, 436 U.S. at 93–94. The Court determined that the father's agreement to let the children live with their mother in California did not constitute such an act. *Id.* at 94. The Court also observed that the action the wife filed arose from the separation agreement that was executed in New York, and the State of California had no connection with that agreement. It rejected the argument that the father derived a personal benefit from having his children live in California because he did not have to support them in his household. Finally,

the Court stated that fairness favored litigation in New York because the father had remained there and the mother had moved. *Id.* at 95–96.

¶ 21. In *Davanis*, we relied on *Kulko* to conclude that the respondent in a post-judgment motion to increase child support did not have sufficient contacts with Wisconsin to satisfy due process. The parties married in Wisconsin in 1970. The marriage certificate listed the husband as a resident of California at the time and in the armed forces. A few months after their marriage, in January 1971, they moved to California. They were both California residents at the time their divorce proceeding began there in 1979. During the marriage, they returned to Wisconsin with their child for at least two weeks in 1971, 1973, and 1976. While the divorce proceeding was pending, the wife moved to Wisconsin with their child. The parties entered into a stipulation, which the wife signed in Wisconsin, providing that the wife was to have custody of the child and was to receive child support payments in Wisconsin, and this was incorporated into the divorce judgment entered in California. The husband "provided for travel to and from Wisconsin for the minor child." In 1983, the wife filed a summons and petition in Wisconsin requesting registration of the California divorce judgment, and in 1984, she filed a motion to increase child support.

¶ 22. We decided that the marriage in Wisconsin, the brief residence in Wisconsin at that time,[11] and the three visits to Wisconsin were not sufficient contacts

---

[11] We noted that although the trial court found the husband was never a resident in Wisconsin, there was some evidence he resided there for three months just after the marriage. We stated that, even if the trial court's finding on this point were clearly erroneous, our conclusion would not change. *Davanis v.*

for personal jurisdiction to attach. We also decided that, "by stipulating to child custody in Wisconsin, visitation in Wisconsin, making support payments in Wisconsin and the property division, [the husband] did not purposefully avail himself of the privilege of conducting activities within Wisconsin." *Davanis*, 132 Wis. 2d at 333. Finally, we concluded that considerations of fairness favored the husband's domicile as the proper forum because he had remained in the state of marital domicile, while the wife had moved to Wisconsin. *Id.* at 334.

¶ 23. In *McCarthy*, we decided that the respondent in a post-judgment motion to increase child support had sufficient contacts to satisfy the requirements of WIS. STAT. § 801.05(1)(d) and due process. The parties in that case were married in Wisconsin in 1971 and lived here until September 1978, when they moved to Oklahoma. The mother returned with the two children to Wisconsin in January 1979. A judgment of divorce was entered by an Oklahoma court in October 1979, and the father remained a resident of Oklahoma. In 1987, the father was in Wisconsin three times during which he visited the children and, on the September 1987 trip here, he was personally served with a motion to increase child support.[12]

¶ 24. We applied the five-factor test in this manner:

---

*Davanis*, 132 Wis. 2d 318, 330, 333 n.9, 392 N.W.2d 108 (Ct. App. 1986).

[12] Although the father was served while in Wisconsin, we declined to decide the case based solely on WIS. STAT. § 805.05(1)(a) and therefore addressed § 805.05(1)(d). *McCarthy v. McCarthy*, 146 Wis. 2d 510, 513, 431 N.W.2d 706 (Ct. App. 1988).

In 1987, John visited his children in Wisconsin during two holiday periods and during an unanticipated trip to Wisconsin in September. The nature of the contact involves the exercise of visitation. That type of contact impacts upon the parent/child relationship, certainly an important and valued relationship. The cause of action, while not a visitation dispute, does involve the children and, thus, is closely related to John's contacts with Wisconsin. Wisconsin's interest in an adequate level of child support is great. The convenience factor cuts evenly with regard to both Wisconsin and the alternate forum of Oklahoma.

*McCarthy*, 146 Wis. 2d at 514.[13] In distinguishing *Davanis* and *Kulko*, we explained that neither of those cases involved the exercise of visitation in the forum state, while in this case, the father's "periodic presence in Wisconsin constitutes purposeful acts which render it fair to require the resolution of this child support dispute in Wisconsin."[14] *Id.* at 515.

---

[13] In *McCarthy*, we focused on the due process analysis rather than a statutory analysis because we were concerned only with whether the respondent's activities were "substantial and not isolated." We were not concerned with whether he was "engaged [in these activities] when the action commenced" because he was here visiting his children when the action commenced on September 19, 1987, and there had been two previous visits in 1987. Once we concluded those three visits to his children in Wisconsin were substantial enough to fulfill the due process requirements, we could correctly conclude those visits also satisfied the requirements of WIS. STAT. § 801.05(1)(d).

[14] We recognize that the following language in *Davanis*, 132 Wis. 2d at 333, may suggest the father might have visited the child in Wisconsin: "Furthermore, we hold that by stipulating to child custody in Wisconsin, visitation in Wisconsin, making

¶ 25. We do not agree with William's suggestion that *McCarthy* cannot be reconciled with *Davanis* and *Kulko*. As we explained in *McCarthy*, the father's three trips to Wisconsin to visit his children were purposeful acts on his part; thus, his contact with Wisconsin was not simply the fact that he had agreed to his wife having custody of his children in Wisconsin and agreed to paying support for them while they resided here. Moreover, these three visits occurred in the same year the action commenced, with the last occurring on the date he was served. This is significant because under WIS. STAT. § 801.05(1)(d) the defendant must be "engaged in substantial and not isolated activities" "when the action is commenced." The visitations of the children in *McCarthy* meet this requirement.

¶ 26. In contrast, in *Davanis* the brief residence in Wisconsin more than ten years before the action for an increase in child support was commenced, and the three family trips to Wisconsin that occurred during the marriage, with the last trip occurring six years prior to the commencement of the action, are not activities engaged in "when the action is commenced." Correspondingly, the lapse of time in *Davanis* between the visits to Wisconsin and the commencement of the action, as well as the purpose of the visits, is reflected in the difference in our application of the five-factor due process analysis in *Davanis* and *McCarthy*: the three family trips occurring over a number of years

support payments in Wisconsin and the property division, George did not purposefully avail himself of the privilege of conducting activities within Wisconsin." However, a careful reading of *Davanis* reveals no record of the father actually visiting the child in Wisconsin: the factual summary states only "George provided for travel to and from Wisconsin for the minor child." *Id.* at 329.

during the marriage, with the last occurring years before the action commenced, compared to the three trips during the year in which the action commenced for the purpose of visiting the children who are the subject of the support action.

¶ 27. Turning to the facts of this case in light of *Kulko, Davanis* and *McCarthy,* we first conclude that William's consent that his children live in Wisconsin with Theresa is not an act by which he has purposefully availed himself of the privilege of conducting activities in Wisconsin. We recognize the facts in this case differ from those in the three foregoing cases in that Theresa did not choose to leave Arizona with the children while William remained there; rather, the entire family left Arizona for Pennsylvania, apparently because of William's incarceration, and Theresa moved to Wisconsin with the children from Pennsylvania while William was still incarcerated. However, although Theresa testified William directed her to go to Wisconsin with the children to live, the court did not find that he had done so.[15] Instead, it found William consented that she live in Wisconsin with the children. This factual finding is not clearly erroneous. We therefore conclude that, based on the facts as found by the trial court, the children's residence in Wisconsin was not the result of a purposeful act by which William availed himself of the privilege of conducting activities in Wisconsin.

¶ 28. In *Davanis,* we also held that sending child support payments to Wisconsin was not a purposeful

---

[15] We observe that WIS. STAT. § 769.201(5) provides for personal jurisdiction over an individual in an action relating to child support when "[t]he child resides in this state as a result of the acts or directives of the individual." Presumably this provision is intended to be consistent with *Kulko v. Superior Court of California,* 436 U.S. 84 (1978).

act availing the payer of the privileges of conducting activities in Wisconsin, as required by due process. From the standpoint of the constitutional analysis in *Kulko* and *Davanis*, we see no principled basis for distinguishing between sending child support payments for one's children in another state, on the one hand, and, on the other hand, telephone calls and letters to one's children in another state or to others there inquiring about the children.[16] Therefore, we conclude the child support payments and letters William sent to Wisconsin and his telephone calls to Wisconsin are not acts by which he availed himself of the privilege of conducting activities within Wisconsin.

¶ 29. We acknowledge the logic of Theresa's argument that William benefits by virtue of his children benefiting from the schools and other services they enjoy in Wisconsin, and that, since William consented that Theresa and his children live in Wisconsin, he could reasonably expect Wisconsin would be a forum for any action involving the children. We also acknowledge that the analytical framework in *Kulko*, which we applied in *Davanis*, is not entirely satisfactory for resolving questions of personal jurisdiction in family matters involving children, given the mobility of families today, the high incidence of divorce and separation, and the myriad of circumstances that affect where the parent with the children chooses to live after the family separates. Nevertheless, we are bound by *Kulko* and *Davanis*.

¶ 30. Theresa contends that, even if William consented to Theresa having custody in Wisconsin, and

---

[16] Accordingly, whether these telephone calls and letters would otherwise be "activities within this state" within the meaning of WIS. STAT. § 801.05(1)(d) is an issue we need not address.

the child support payments, letters, and telephone calls do not, standing alone, confer personal jurisdiction over William, we may consider these, along with his visits to Wisconsin, in deciding whether his activities meet the requirements of WIS. STAT. § 805.01(1)(d) and due process. We do not agree. If a type of conduct—such as consent that one's children live in a state—is not conduct that is à purposeful act as required by *Kulko*, we do not see how it can be one of the "contacts" with the state for due process purposes, or one of the activities we consider under § 801.05(1)(d). We therefore turn our attention to William's visits to Wisconsin, which are the primary focus of Theresa's argument.

¶ 31. As we have noted above, WIS. STAT. § 801.05(1)(d) requires that William be "engaged in substantial and not isolated activities within this state" "when the action [was] commenced" in May 1999. His last visit occurred in October 1998 when William came to visit his children after he was living separately from them. The first three occurred in 1991, 1993, and 1994 respectively, while William was living with his children, and involved visits to Theresa's relatives in Wisconsin. Four visits over this time period do not constitute an ongoing activity in which William was engaged at the time this action was commenced, as was the case in *McCarthy*. Indeed, the first three visits, besides occurring years before the action commenced, were not related to this divorce action at all, except insofar as the divorce action concerns William's family and he made those trips with his family. Therefore, even if we ignore the statutory language of "when the action commences," as Theresa does in her analysis, and consider only the five *Zerbel* factors, we do not agree with Theresa that there is a significant connec-

tion between the nature of those three visits and this action.

¶ 32. We agree there is a closer connection between the October 1998 visit and this action, both in time and in purpose of the visit. The purpose of that visit was to see his children and the purpose of this action is in part to resolve questions concerning the custody, visitation, and support of the children. However, this one visit, taking place seven months before the action was commenced, is an isolated instance of his visiting his children rather than periodic and ongoing visitation, as was the case in *McCarthy*.

¶ 33. In summary, we conclude William's contacts with Wisconsin do not meet the requirements either of WIS. STAT. § 801.05(1)(d) or the due process clause. Therefore, the trial court does not have personal jurisdiction over William. Accordingly, we reverse the decision of the trial court and remand with directions to dismiss the petition for divorce.[17]

*By the Court.*—Order reversed and cause remanded with directions.

---

[17] The trial court in its decision noted that the evidence relevant to custody and visitation of the children was in Wisconsin, which may have been a consideration in its decision. However, the fact that a Wisconsin court may be the proper forum to resolve custody and visitation disputes under the Uniform Child Custody Jurisdiction Act (UCCJA) because of the children's presence here is unrelated to the question of whether a Wisconsin court has personal jurisdiction over William. *See Paula M.S. v. Neal A.R.*, 226 Wis. 2d 79, 85–87, 593 N.W.2d 486 (Ct. App. 1999) (UCCJA does not establish a constitutionally sufficient basis for personal jurisdiction over a non-resident parent; requirements of due process for personal jurisdiction must be met even though the court has subject matter jurisdiction under the UCCJA).

¶ 34. ROGGENSACK, J. *(dissenting).* Because I do not agree with the majority opinion that it would be unfair to William Bushelman to require him to respond to his wife's divorce action in Wisconsin and because I conclude that Wisconsin's long arm statute, WIS. STAT. § 801.05(1)(d), does confer personal jurisdiction over him under the facts of this case, I must respectfully dissent.

¶ 35. The majority concludes that William has had insufficient contacts with Wisconsin to show he "purposefully availed himself of the privilege of conducting activities in Wisconsin;" and therefore, Wisconsin courts cannot exercise personal jurisdiction over him under WIS. STAT. § 801.05(1)(d). It does so by isolating each contact William has had with Wisconsin and, one by one, concluding that each is insufficient to support personal jurisdiction. I conclude that analysis is erroneous because the five-factor due process test set out in *Zerbel v. H.L. Federman & Co.*, 48 Wis. 2d 54, 64–66, 179 N.W.2d 872, 878–79 (1970), requires consideration of all the factors collectively to determine whether, as an aggregate, they are sufficient to comport with the requirements of due process[1] necessary to exercise personal jurisdiction. *Id.* at 65, 179 N.W.2d at 878. *Zerbel* requires us to examine: "the quantity of contacts with Wisconsin, the nature and quality of the contacts, the source of the cause of action and its connection with those contacts, the interest of Wisconsin in the action, and convenience." *McCarthy v. Mc Carthy*, 146 Wis. 2d 510, 514, 431 N.W.2d 706, 708 (Ct. App. 1988) (citing *Zerbel*, 48 Wis. 2d at 64–66, 179

---

[1] Due process requires a "sufficient connection" between William and Wisconsin to make it fair to require him to meet Theresa's action in Wisconsin. *Kulko v. Superior Court*, 436 U.S. 84, 91 (1978).

N.W.2d at 878). If the requirements of due process are satisfied, so too are the statutory standards of "substantial and not isolated activities" required by § 801.05(1)(d). *McCarthy*, 146 Wis. 2d at 513, 431 N.W.2d at 707 (citing *Hasley v. Black, Sivalls & Bryson, Inc.*, 70 Wis. 2d 562, 575, 235 N.W.2d 446, 453 (1975)).

¶ 36. In my view, the undisputed facts of record considered as an aggregate under *Zerbel* support the conclusion that exercising personal jurisdiction over William comports with due process. Here, the record shows that Theresa and the children moved to Wisconsin while William was in federal prison in Pennsylvania. William was familiar with the environment into which he consented[2] that his wife and

---

[2] At the evidentiary hearing, Theresa gave the only testimony about why she and the children moved to Wisconsin. She responded to William's attorney's questions:

Q Did he tell you to take the children to Wisconsin?

A Yes.

Q He directed to you (sic) take the children to Wisconsin?

A Yes.

 . . .

Q Didn't he tell you to stay in Erie, Pennsylvania when you wanted to take the children back to Wisconsin?

A No.

Q He told you to pick up and move to Wisconsin and take the kids several hundred miles away from him?

A Yes.

The circuit court did not rule on whether William "directed" or through some other act caused Theresa to bring the children to Wisconsin because Theresa's attorney sought personal jurisdiction for the entire action before the court, rather than arguing in the alternative that WIS. STAT. § 769.201(5) was a basis for personal jurisdiction in regard to child support, at a

children move. He had visited Theresa's family in Wisconsin several times before October 1996, when Theresa moved here. On one of those visits, William flew to Wisconsin, rented a car, drove to Sun Prairie and enlisted the services of the Sun Prairie police department in retrieving his children from the home of his sister-in-law, Sandra Rodriguez. Additionally, he telephoned to Wisconsin to speak with the children and Theresa weekly when he was in prison and twice monthly after his release. Beginning in April 1998, William mailed monthly child support payments of $200 - $250 per month to Theresa in Wisconsin. Furthermore, he exercised visitation in Wisconsin for one week in October of 1998; Theresa's petition for divorce was filed only six months later. The quantity of his contacts with Wisconsin were numerous, not incidental.

¶ 37. Additionally, the nature of those contacts all related to William's family, and Theresa's cause of action involves only family matters. Each of William's contacts impacted upon his parent/child relationship, from seeking the assistance of a Wisconsin police force to obtain custody of his children, to exercising visitation here. Furthermore, William committed the illegal acts that caused him to be sentenced to federal prison in Pennsylvania, and that imprisonment impacted on Theresa and his children, causing them to move to Wisconsin so Theresa's family could help her with the children. Theresa did not voluntarily break up a household she and William were maintaining with the children in Arizona. That William should have to meet an action in Wisconsin that seeks relief for his family is

minimum. However, William's trial court brief listed § 769.201(5) as a potential basis for jurisdiction, and the above questions indicate it was of concern to his counsel.

not unfair to him, as his family has been living in Wisconsin for four and one-half years as a direct result of his actions.

¶ 38. Furthermore, Wisconsin has a strong interest in providing adequate and regular child support for children who reside within its borders. *McCarthy*, 146 Wis. 2d at 514, 431 N.W.2d at 708. Wisconsin is also the most convenient forum for this action because all of the children's school records and recent medical histories are here. Furthermore, neither party now resides in Arizona where they were married. William resides in Texas, where Theresa and the children have never lived. And finally, the record reflects that Theresa's attorney is representing her on a *pro bono* basis and that she was given court permission to file this action without the payment of fees because she is indigent. Therefore, as a practical matter, there is no forum in which she can bring an action for divorce and support if Wisconsin is not a proper forum. On the other hand, William has retained competent counsel and, though he chose not to appear by telephone at the hearing before the circuit court, that option was offered to him. Therefore, I conclude that the aggregate of the *Zerbel* factors demonstrates that requiring William to meet this action in Wisconsin, as the circuit court did, would not deny him due process of law. Accordingly, because I would affirm its decision, I respectfully dissent.